```
                                                    FILED
           UNITED STATES DISTRICT COURT         01 JUN 21  PH 3:58
           NORTHERN DISTRICT OF ALABAMA
                 SOUTHERN DIVISION              U.          COURT
                                                  N.D OF ALABAMA

JOSEPH R. PURSIFULL,           )
                               )
     Plaintiff,                )
                               )
vs.                            )    Civil Action No. CV 00-S-3318-S
                               )
UNUM LIFE INSURANCE COMPANY    )
OF AMERICA, GUARANTEE LIFE     )
INSURANCE COMPANY, CHEROKEE    )
WIRELESS SERVICES, INC.,       )          ENTERED
CHEROKEE CONTRACTING, INC.,    )
NETWORK CONSTRUCTION SERVICES, )          JUN 21 2001
INC., CORENET SERVICES, INC.,  )
                               )
     Defendants.               )
```

## MEMORANDUM OPINION

This action is before the court on a motion to strike or, in the alternative, for judgment on the pleadings (doc. no. 58) filed by defendant UNUM Life Insurance Company of America ("UNUM"). UNUM also has filed a motion to withdraw the eighth and forty-sixth affirmative defenses asserted in its answer to plaintiff's amended complaint (doc. no. 59). Finally, plaintiff seeks leave of court to file a second amended complaint (doc. no. 67).

### I. BACKGROUND

Plaintiff Joseph R. Pursifull was employed at various times by defendants Cherokee Wireless Services, Inc. ("Cherokee Wireless"), Cherokee Contracting, Inc. ("Cherokee Contracting"), Network Construction Services, Inc. ("Network Construction"), and CoreNet



Services, Inc. ("CoreNet").[1]  (For convenience, the foregoing entities shall be collectively referred to as "the employer defendants.")

The employer defendants provided to employees, at no charge, disability insurance coverage in accordance with the terms of an employee benefit plan.  During 1996 and 1997, the disability insurance carrier was Guarantee Life Insurance Company ("Guarantee Life").

Plaintiff subsequently was diagnosed as suffering from colon and liver cancer,[2] conditions that necessitated surgery and other painful treatments.  The dates of such events are not specified in the pleadings, but apparently they occurred prior to the end of 1996, because plaintiff applied for and received short-term disability benefits from Guarantee Life between November 19 and December 2, 1996, and, between April 12 and June 2, 1997.

Plaintiff eventually returned to work (again, on some date that is not specified in the pleadings), but with a guarded prognosis.

The employer defendants changed long-term disability insurance

---

[1] According to Cherokee Contracting, it "transferred its assets, liabilities and business operations to defendant Cherokee Wireless ... on March 20, 1997, and later became Redwood, Inc." Motion to dismiss and to strike (doc. no. 13).  The record presently before the court does not offer an explanation as to the precise relationships between or among the other employer defendants.

[2] Amended complaint (doc. no. 25), ¶ 13.

2

carriers on January 1, 1998, switching from Guarantee Life to UNUM. UNUM's disability policy contained a "continuity of coverage" provision, ostensibly entitling employees of the employer defendants to the same coverages previously provided under the Guarantee Life policy.[3] Plaintiff alleges that both Guarantee Life and UNUM "knew of [his] diagnosis and probability of long term disability."[4]

Plaintiff filed a claim for long-term disability benefits with UNUM on June 18, 1998. Plaintiff's request for disability benefits was approved by a letter dated July 23, 1998, and UNUM immediately began paying plaintiff's long-term disability payments.[5]

Under the terms of UNUM's policy, plaintiff was supposed to be paid the same monthly benefit that he would have received under the Guarantee Life plan: that is, an amount equal to 60% of his basic monthly earnings. UNUM's July 23, 1998 letter approving plaintiff's claim stated, however, that his benefits would be calculated at 50% of his basic monthly earnings.

Plaintiff challenged this discrepancy on July 30, 1998. In response, UNUM conducted a "post-approval claim investigation concerning the percentage of basic monthly earnings [plaintiff]

---

[3] *Id.*, Exhibit A (UNUM policy), at LTD-OTR-1.

[4] *Id.*, ¶ 20-21.

[5] *Id.*, Exhibit B (Approval letter).

3

should receive and ... investigated whether continuity of coverage existed."[6] During the investigation, UNUM discovered that employer defendants had "failed to pay two months of disability premiums allowing the prior policy with Guarantee Life to lapse."[7] UNUM issued plaintiff a letter on January 19, 1999, terminating his long-term disability benefits, citing "a pre-existing condition and no continuity of coverage" as the basis for the termination.[8]

UNUM notified plaintiff of his right to appeal the decision. Plaintiff alleges that two circumstances convinced him that he should not appeal UNUM's action: (1) "[t]he manner in which UNUM had denied his coverage by re-investigating his claim after [he had] questioned the benefit amount and seizing upon his employer's failure" to pay premiums; and, (2) Cherokee Wireless promised to rectify the situation by paying plaintiff the full benefits due under the long-term disability policy.[9]

Cherokee Wireless did pay plaintiff as promised for a period of time. The company, however, was subsequently liquidated and ceased payments.[10] Plaintiff received his last check from Cherokee

---

[6] *Id.*, ¶ 26.
[7] *Id.*, ¶ 29.
[8] *Id.*, ¶ 31.
[9] *Id.*, ¶ 32.
[10] *Id.*, ¶ 34.

4

Wireless on September 9, 1999.[11]

Plaintiff initiated this action on November 16, 2000. Defendant UNUM now has moved to strike or, in the alternative, for judgment on the pleadings on, Counts II, V, VI, VII, VIII, and IX of plaintiff's amended complaint.

## II. STANDARDS

Rule 12(c) of the Federal Rules of Civil Procedure provides that,

> [a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

"Judgment on the pleadings is proper when no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996). When reviewing such a motion, the court is required to accept the facts alleged in the complaint as true, and to view them in the light most favorable to the nonmoving party. *Swerdloff v. Miami National Bank*, 584 F.2d 54, 57 (5th Cir. 1978).[12]

---

[11] *Id.*

[12] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit

5

Rule 12(f) of the Federal Rules of Civil Procedure provides that:

> [u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Motions to strike are not favored and usually will be denied, unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *See Poston v. American President Lines, Limited*, 452 F.Supp. 568, 570 (S.D. Fla. 1978) (citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir.1962)). When reviewing a motion to strike, the court must treat all well pleaded facts as admitted, and cannot consider matters beyond the pleadings. *See U.S. Oil Company, Inc. v. Koch Refining Company*, 518 F. Supp. 957, 959 (E.D. Wis. 1981).

### III. DISCUSSION

**A.   Plaintiff's Breach of Contract Claim:   Count VII**

During oral arguments at the June 20, 2001 motion docket, plaintiff's counsel conceded that his breach of contract claim (Count VII of the amended complaint) is preempted by the Employee

---

decisions handed down prior to the close of business on September 30, 1981.

6

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and should be dismissed. *See* 29 U.S.C. § 1144(a) (ERISA preempts "any and all State laws insofar as they now or hereafter relate to any employee benefit plan."); *see also, e.g., Swehun v. Guardian Life Insurance, Co.*, 979 F.2d 195, 198 (11th Cir. 1992) (breach of contract claims are preempted by ERISA).

**B.   Breach of Fiduciary Duty Claims: Counts II, V, and VI**

Plaintiff's attorney also conceded that his claims alleging breach of fiduciary duties by UNUM (Counts II, V, and VI) are due to be dismissed. Plaintiff alleges in Count I of his amended complaint, that UNUM wrongfully denied him benefits under the plan, and seeks recovery of such benefits under 29 U.S.C. § 1132(a)(1)(B).[13] Plaintiff recognizes that an individual who directly asserts a claim pursuant to § 1132(a)(1)(B) for benefits due under the terms of an employee benefit plan cannot also maintain breach of fiduciary duty claims under § 1132(a)(3).[14] *See*

---

[13] 29 U.S.C. § 1132(a)(1)(B) provides that a civil action may be brought:

(1)   by a participant or beneficiary—
. . .
    (B)   to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan....

[14] 29 U.S.C. § 1132(a)(3) provides that a civil action may be brought:

(3)   by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this

*Variety Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 1077-78, 134 L.Ed.2d 130 (1996) (holding that plan participants and beneficiaries are precluded from bringing breach of fiduciary duty and other equitable claims under § 1132(a)(3), where an adequate remedy is available under § 1132(a)(1)(B)); *Katz v. Comprehensive Plan of Group Insurance*, 197 F.3d 1084, 1088-1089 (11th Cir. 1999) (same). Accordingly, Counts II, V, and VI of plaintiff's amended complaint shall be dismissed.

### C. Plaintiff's Bad Faith Claims: Counts VIII and IX

Plaintiff alleges in Counts VIII and IX of his amended complaint that UNUM's conduct constituted a bad faith refusal to pay benefits owed to him pursuant to a valid long-term disability insurance policy. Count VIII is based upon Alabama's common-law formulation of such an action, and Count IX is based upon the statutory codification of the judicially-created remedy: Alabama Code § 27-12-24 (1975). UNUM contends both claims are preempted by ERISA.

ERISA's preemption clause provides that the Act "supersede[s] any and all State laws insofar as they now or hereafter relate to

---

subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

8

any employee benefit plan...." 29 U.S.C. § 1144(a);[15] *see also, e.g., First National Life Insurance Company v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1549 (11th Cir. 1992), cert. denied, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). "A state law relates to an employee benefit plan if it "has a connection with or reference to such a plan." *Id.* at 1550 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). The Supreme Court has observed that ERISA's preemption clause "is conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), and instructed district courts that it should be "expansively applied." *Ingersoll-Rand Company v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990).

Even so, the preemption clause is limited by the so-called "savings clause," 29 U.S.C. § 1144(b)(2)(A), which provides: "Except as provided in subparagraph (B),[16] nothing in this

---

[15] In full text, 29 U.S.C. § 1144(a) provides:

   Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

[16] *I.e.*, § 1144(b)(2)(B), the so-called "deemer clause," which provides, in pertinent part, that: "Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company ... or to be engaged in the business of insurance...." The Supreme Court construed the

9

subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

The Alabama Supreme Court first recognized a cause of action in tort for an insurance company's bad faith failure to pay a policy claim in *Chavers v. National Security Fire & Casualty Co.*, 405 So. 2d 1 (Ala. 1981), *appeal after remand*, 456 So. 2d 293 (Ala. 1984); *see also, e.g., Sexton v. Liberty National Life Insurance*

---

deemer clause within the context of a Pennsylvania statute that precluded insurance companies from demanding reimbursement for medical expenses from individuals who had recovered damages in a tort action against negligent drivers of motor vehicles in FMC Corp. v. Holiday, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

> We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer ... or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded ERISA plans are exempt from the state regulation insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. <u>On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation</u>. An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

*Id.* at 61, 111 S.Ct. at 409 (emphasis added).

10

Co., 405 So. 2d 18 (Ala. 1981); *Gulf Atlantic Life Insurance Co. v. Barnes*, 405 So. 2d 916 (Ala. 1981). The judicially-created, common law action had five elements:

> (a) An insurance contract between the parties and a breach thereof by the defendant;
>
> (b) An intentional refusal to pay the insured's claim;
>
> (c) The absence of any reasonably legitimate or arguable reason for that refusal;
>
> (d) The insurer's actual knowledge of the absence of any legitimate or arguable reason;
>
> (e) If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*National Secuity Fire & Casualty Co. v. Bower*, 417 So. 2d 179, 183 (Ala. 1982); *see also, e.g., Independent Fire Insurance Co. v. Lunsford*, 621 So. 2d 977 (Ala. 1993) (reiterating *Bower* elements).

The Alabama Legislature subsequently codified the judicially-created remedy. *See Hilley v. Allstate Insurance Co.*, 562 So. 2d 184, 185 n.1 (Ala. 1990). The pertinent code section reads as follows:

> No <u>insurer</u> shall, without just cause, refuse to pay or settle claims arising under coverages provided by <u>its policies</u> in this state and with such frequency as to indicate a general business practice in this state, which

11

general business practice is evidenced by:

    (1) A substantial increase in the number of complaints against the <u>insurer</u> received by the <u>insurance department</u>;

    (2) A substantial increase in the number of lawsuits against the <u>insurer</u> or its <u>insureds</u> by claimants;

    (3) Other relevant evidence.

Alabama Code § 27-12-24 (1975) (1998 Replacement Vol.) (emphasis supplied). That statute was codified in Chapter 12 ("Trade Practices Law") of Title 27: the "title [which] constitutes the Alabama Insurance Code." *Id.* § 27-1-1. The Legislature proclaimed the purpose of those statutes codified in Chapter 12 as follows:

> <u>The purpose of this chapter is to regulate trade practices in the business of insurance</u> in accordance with the intent of congress as expressed in the Insurance Regulation Act by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

*Id.* § 27-12-1(a) (emphasis supplied). The terms "insurance" and "insurer" are defined in § 27-1-2, as follows:

> For the purpose of this title, the following terms shall have the meanings respectively ascribed to them by this section.
>
> (1) INSURANCE. A contract whereby one undertakes to indemnify another or pay or provide a specified amount or benefit upon determinable contingencies.

12

>    (2) INSURER. Every person engaged as indemnitor, surety or contractor in the business of entering into contracts of insurance.

Alabama Code § 27-1-2(1) & (2).

At least two judges of this court have held that the state legislative codification of Alabama's preexisting, common law tort of bad faith failure to pay a valid insurance claim is saved from ERISA preemption because the statute "regulates insurance." *See, e.g., Gilbert v. ALTA Health & Life Insurance Company*, 122 F.Supp.2d 1267, 1273 (N.D. Ala. 2000) (Johnson, J.); *Hill v. Blue Cross Blue Shield of Alabama*, 117 F.Supp.2d 1209, 1212 (N.D.Ala. 2000) (Acker, J.). Both judges observed, as has this court *supra*, that the judically-created remedy was codified by the legislature "within the insurance title of the Code." *Gilbert*, 122 F. Supp. 2d at 1272 (quoting *Hill*, 117 F. Supp. 2d at 1211-12) (internal quotation marks omitted). Additionally, Judge Johnson noted that the pattern jury instructions for the tort of bad faith promulgated by the Supreme Court of Alabama's standing committee on civil jury instructions were cataloged in the chapter pertaining to "Insurance." *Gilbert*, 122 F. Supp. 2d at 1272.[17]

---

[17] The pertinent instructions provide that:

> Every <u>insurance policy</u> contains a duty implied by law of good faith and fair dealing with the other party to the policy. This duty requires that neither party interfere with the rights of the

13

Finally, both judges observed that the Supreme Court of Alabama clearly has limited the action to claims involving contracts of insurance.

> Although we agree that every contract does impose an obligation to act in good faith and to deal fairly (*see*, *e.g.*, § 7-1-203, Ala.Code 1975, for the obligation imposed in the commercial context), <u>we have consistently refused to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance policy cases</u>. ...

*American Cast Iron Pipe Co. v. Williams*, 591 So. 2d 854, 857 (Ala. 1991) (emphasis supplied).

For such reasons Judges Acker and Johnson concluded "that 'the

---

other to receive the benefits of the <u>policy</u>. The plaintiff claims that the <u>defendant insurer</u> has violated this implied duty of good faith and fair dealing.

The <u>defendant insurer</u> denies that it has violated this implied duty of good faith and fair dealing. Therefore, the burden is upon the plaintiff to reasonably satisfy you from the evidence of the truthfulness of each of the following claims:

1. That there was <u>an insurance contract</u> between the parties;

2. That by the terms of the contract the <u>defendant insurer</u> was obligated to pay the plaintiff's claim;

3. That the <u>defendant insurer</u> intentionally refused to pay the plaintiff's claim;

4. That there was no reasonably legitimate, arguable or debatable reason for that refusal to pay, that is, no reason that was open to dispute or question; and

5. That the <u>defendant insurer</u> had actual knowledge that there was no reasonably legitimate, arguable or debatable reason.

1 *Alabama Pattern Jury Instructions — Civil* § 20.37, at 560 (2d ed. 1993) (emphasis supplied).

14

only targets for the tort of bad faith in Alabama are insurance companies' and ... the Alabama tort of bad faith for refusal to pay benefits clearly regulates insurance." *Gilbert*, 122 F. Supp. 2d at 1272 (quoting *Hill*, 117 F. Supp. 2d at 1212).

It was but a short walk from such conclusions through those cases construing the McCarran-Ferguson Act and ERISA's "savings clause" to the dispositive judgment: Alabama's tort action for an insurance company's bad faith refusal to pay a valid insurance claim "falls within the ERISA savings clause and is not preempted by ERISA." *Gilbert*, 122 F. Supp. 2d at 1273.

Judges Johnson and Acker also determined that a recent Supreme Court decision supported the conclusion that Alabama's bad faith statute is not preempted by ERISA. *See UNUM Life Insurance Company of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). In that case, the Court implied that a state action for bad faith would be saved by ERISA's "savings clause" if it were specifically directed to the insurance industry. *Id.* at 377, 119 S.Ct. at 1391 ("[*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d.39 (1987)] concerned Mississippi common law creating a cause of action for bad faith breach of contract, law not specifically directed to the insurance industry and therefore

15

not saved from ERISA preemption.").

For the foregoing reasons, this court concludes that plaintiff's claims for UNUM's alleged bad faith refusal to pay long-term disability benefits are not preempted, and defendant's motion to strike those claims or, in the alternative, for judgment on the pleadings is due to be denied.

An appropriate order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 21st day of June, 2001

_____
United States District Judge