UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

01 JUL 17 PM 1: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

JOSEPH R. PURSIFULL,                    )
                                        )
      Plaintiff,                        )
                                        )
vs.                                     )   Civil Action No. CV 00-S-3318-S
                                        )
UNUM LIFE INSURANCE COMPANY             )
OF AMERICA, et al.,                     )   ENTERED
                                        )
      Defendants.                       )   JUL 17 2001

## MEMORANDUM OPINION

This action is before the court on a motion to reconsider
filed by defendant UNUM Life Insurance Company ("UNUM") (doc. no.
76). UNUM requests that this court reconsider the order entered on
June 21, 2001 (doc. no. 69) granting UNUM's motion to strike or, in
the alternative, for judgment on the pleadings (doc. no. 58) with
respect to plaintiff's claims of breach of contract and breach of
fiduciary duty, but denying the motion as to plaintiff's bad faith
claims brought pursuant to Alabama law. The thrust of UNUM's
motion is that the remedies plaintiff seeks pursuant to his bad
faith claims are inconsistent with the remedies provided for in
ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), and those
claims, therefore, must be preempted.[1]

## I. STANDARDS

A motion to reconsider must demonstrate why the court should

---

[1] Motion to reconsider (doc. no. 76), ¶ 3, 15.



reconsider its decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993). In the interests of finality and the conservation of judicial resources, reconsideration of a prior order is an extraordinary remedy to be used sparingly. *See Pennsylvania Insurance Guaranty Association v. Trabosh*, 812 F.Supp. 522, 524 (E.D. Pa. 1992).

Courts have generally recognized only three grounds which warrant reconsideration of an order: (1) an intervening change in the controlling law; (2) the availability of new and material evidence; and, (3) the need to correct a clear error or manifest injustice. *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994); *Cover,* 148 F.R.D. at 295. "With regard to the third ground, the Court cautions that any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Atkins v. Marathon LeTourneau Co.* 130 F.R.D. 625, 626 (S.D. Miss. 1990).

2

## II. SUMMARY OF RELEVANT FACTS

At all times relevant to this action, plaintiff Joseph R. Pursifull was employed by the following entities which, for convenience, the court will refer to as "the employer defendants": Cherokee Wireless Services, Inc.; Cherokee Contracting, Inc.; Network Construction Services, Inc.; and CoreNet Services, Inc.[2] The employer defendants provided employees, including plaintiff, disability insurance coverage at no charge, pursuant to the terms of an employee benefit plan. During the years 1996 and 1997, Guarantee Life Insurance Company ("Guarantee Life") was the disability insurance carrier.

Plaintiff was subsequently diagnosed with colon and liver cancer.[3] These afflictions required plaintiff to submit to surgery and other painful treatments. The date of plaintiff's initial diagnosis and his subsequent treatments are not specified in the pleadings, but it appears that they occurred prior to the end of 1996, because plaintiff applied for and received short-term disability benefits from Guarantee Life on two occasions, once

---

[2] The employer defendants contend that Cherokee Contracting, Inc., "transferred its assets, liabilities and business operations to defendant Cherokee Wireless ... on March 20, 1997, and later became Redwood, Inc." Motion to dismiss and to strike (doc. no. 13). The record before the court does not establish the precise relationships between or among the other employer defendants.

[3] Amended complaint (doc. no. 25), ¶ 13.

3

between the dates of November 19 and December 2, 1996, and again between the dates of April 12 and June 2, 1997.  At a date not disclosed in the pleadings, plaintiff returned to work, but did so with a guarded prognosis.

On January 1, 1998, the employer defendants changed long-term disability insurance carriers from Guarantee Life to UNUM.  Under a "continuity of coverage" provision in UNUM's disability policy, employees of the employer defendants were entitled to the same coverages previously provided under the Guarantee Life policy.[4]

Five months later, on June 18, 1998, plaintiff filed a claim for long-term disability benefits with UNUM.  This claim was approved by UNUM in a letter dated July 23, 1998, and plaintiff began receiving long-term disability payments shortly thereafter.[5]

Plaintiff contends that, according to the terms of UNUM's policy, he was to receive an amount equal to 60% of his basic monthly earnings.  Plaintiff derived this amount from UNUM's plan, which provided that he was to be paid the same amount in disability benefits that he would have been entitled to receive pursuant to the Guarantee Life plan.  However, a letter from UNUM dated July 23, 1998, informed plaintiff that his disability benefits would be

---

[4] *Id.*, Exhibit A (UNUM policy), at LTD-OTR-1.

[5] *Id.*, Exhibit B (Approval letter).

4

calculated at only 50% of his basic monthly earnings.

Plaintiff took issue with this discrepancy, and challenged UNUM's actions on July 30, 1998. UNUM countered plaintiff's complaint by conducting a "post-approval claim investigation concerning the percentage of basic monthly earnings [plaintiff] should receive and ... investigated whether continuity of coverage existed."[6]

During its probe into these issues, UNUM discovered that the employer defendants neglected "to pay two months of disability premiums allowing the prior policy with Guarantee Life to lapse."[7] Pursuant to these findings, UNUM notified plaintiff in a letter dated January 19, 1999, that his long-term disability benefits were immediately terminated. UNUM cited "a pre-existing condition and no continuity of coverage" as the grounds justifying its action.[8]

In an apparent attempt to rectify the situation in which plaintiff found himself, through no fault of his own, Cherokee Wireless Services, Inc., promised to pay plaintiff an amount equal to the full benefits allegedly due under the long-term disability policy.[9] Cherokee Wireless was good to its word for a short period

---

[6] *Id.*, ¶ 26.

[7] *Id.*, ¶ 29.

[8] *Id.*, ¶ 31.

[9] *Id.*, ¶ 32.

of time.  The company was later liquidated, however, and ceased making payments to plaintiff in September of 1999.[10]

Plaintiff initiated this action on November 16, 2000, alleging, among other things, that UNUM breached its contract of insurance, breached its fiduciary duties, and acted in bad faith when it refused to pay his disability benefits. On April 19, 2001, UNUM moved to strike or, in the alternative, for judgment on the pleadings with respect to several of plaintiff claims.[11]  In an order entered on June 21, 2001 (doc. no. 69), this court granted that motion in part.  The court dismissed plaintiff's claims against UNUM for breach of contract and breach of fiduciary duty, but denied the motion with respect to plaintiff's bad faith claims based upon Alabama law,[12] because those claims fell within ERISA's "savings clause," 29 U.S.C. § 1144(b)(2)(A).[13]

## IV. DISCUSSION

As described previously by this court,[14] 29 U.S.C. § 1144(a) of ERISA contains a broad preemption clause which provides that

---

[10] *Id.*, ¶ 34.

[11] UNUM requested that Counts II, V, VI, VII, VIII, and IX of plaintiff's amended complaint be dismissed.

[12] Plaintiff brought two bad faith claims against UNUM.  Count VIII of plaintiff's amended complaint is based upon Alabama's common-law tort of bad faith, while Count IX is premised upon the statutory codification of the judicially-created remedy.

[13] Memorandum opinion (doc. no. 68), at 13-15.

[14] *Id.* at 8-10.

6

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The effect of the preemption clause is limited to some degree by the savings clause, 29 U.S.C. § 1144(b)(2)(A), which states that, with but one exception, nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." The one exception noted in § 1144(b)(2)(A) is the "deemer clause," 29 U.S.C. § 1144(b)(2)(B), which provides that no employee-benefit plan "shall be deemed to be an insurance company ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies...."

Upon consideration of the above principles and decisions such as *UNUM Life Insurance Company of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), *Hill v. Blue Cross Blue Shield of Alabama*, 117 F. Supp. 2d 1209 (N.D. Ala. 2000), and *Gilbert v. ALTA Health & Life Insurance Company*, 122 F. Supp. 2d 1267 (N.D. Ala. 2000), this court concluded that plaintiff's bad faith claims were saved from ERISA preemption.[15]

In its motion to reconsider, UNUM implies that the court engaged in only half of the necessary analysis. Even though this

---

[15] *Id*. at 13-15.

court has concluded that the Alabama tort of bad faith is "saved" pursuant to § 1144(b)(2)(A), UNUM argues that it is nevertheless preempted because ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), provides the exclusive remedies for claims brought by ERISA plan participants.   UNUM asserts that "[t]he remedies Plaintiff seeks pursuant to her [sic] bad faith claim are preempted because they conflict with ERISA's civil enforcement scheme and would thwart Congressional intent by creating an obstacle to accomplishing the goals Congress sought to achieve when it drafted the statute."[16]

Thus, the issue presented can be framed as follows:   in a case where plaintiff's state law claim for bad faith refusal to pay insurance benefits has been found to regulate insurance within the meaning of ERISA's savings clause, is the claim nevertheless preempted by ERISA because it affords remedies which conflict with ERISA's civil enforcement scheme, 29 U.S.C. § 1132(a)?[17]

---

[16] Motion to reconsider (doc. no. 76), ¶ 15.

[17] 29 U.S.C. § 1132(a) provides:

A civil action may be brought —

   (1)   by a participant or beneficiary —

       (A)   for the relief provided for in subsection (c) of this section [regarding requests for information from the administrator], or

       (B)   to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify

8

## A.    The *Pilot Life* Decision

UNUM relies largely on *Pilot Life Insurance Company v.*
*Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), as
support for its argument.  There, the plaintiff, Everate Dedeaux,
alleged that Pilot Life Insurance Company had wrongfully terminated
his disability benefits.  Dedeaux brought an action alleging bad
faith under Mississippi law.  Pilot Life argued that claim was not
salvaged from ERISA preemption under the savings clause, because
the tort was not a law which regulated insurance.

In its opinion, the Supreme Court engaged in an extensive
analysis of the factors which determine whether a state law is one

---

his rights to future benefits under the terms of the plan;

(2)    by the Secretary, or by a participant, beneficiary or fiduciary for
       appropriate relief under section 1109 of this title;

(3)    by a participant, beneficiary, or fiduciary (A) to enjoin any act or
       practice which violates any provision of this subchapter or the
       terms of the plan, or (B) to obtain other appropriate equitable
       relief (i) to redress such violations or (ii) to enforce any
       provisions of this subchapter or the terms of the plan;

(4)    by the Secretary, or by a participant, or beneficiary for
       appropriate relief in the case of a violation of 1025(c) of this
       title;

(5)    except as otherwise provided in subsection (b) of this subsection,
       by the Secretary (A) to enjoin any act or practice which violates
       any provision of this subchapter, or (B) to obtain other appropriate
       equitable relief (i) to redress such violation of (ii) to enforce
       any provision of this subchapter;

(6)    by the Secretary to collect any civil penalty under subsection (i)
       of this section.

9

which "regulates insurance." In evaluating whether the Mississippi tort of bad faith fell within the savings clause, the Court followed the analysis set forth in *Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (upholding a Massachusetts law that required insurance companies to provide mental health coverage in all health insurance policies). First, the *Pilot Life* Court examined the "common-sense view" of the savings clause language, and determined that "a common-sense understanding of the phrase 'regulates insurance' does not support the argument that the Mississippi law of bad faith falls under the saving clause." *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554. The Court explained:

> Even though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law. Any breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law.

*Id.* at 50, 107 S.Ct. at 1554 (emphasis supplied).

Next, the Court discussed whether the law at issue regulated the "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* *Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553. The determinative factors for this portion of the analysis

10

consisted of: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. *Id.* at 48-49, 107 S.Ct. at 1553-54. The Court found that these criteria were not met.[18] Accordingly, the Court concluded that the Mississippi law of bad faith did not "regulate insurance" pursuant to ERISA's savings clause, and was, therefore, preempted. *Id.* at 49, 107 S.Ct. at 1554 ("In the present case, the considerations weighed in *Metropolitan Life* argue against the assertion that the Mississippi law of bad faith is a state law that 'regulates insurance.'").

The *Pilot Life* Court then buttressed its decision by stating that the exclusivity of remedies offered under ERISA also suggest that plaintiff's claim should be preempted: "The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Id.* at 54, 107 S.Ct. at 1556. The

---

[18] The court determined that "the Mississippi common law of bad faith does not effect a spreading of policyholder risk," is not "'integral' to the insurer-insured relationship," and is not a law limited to the insurance industry. *Id.* at 50-51, 107 S.Ct. at 1554-55.

11

Court stated that this conclusion was "supported, first, by the language and structure of the civil enforcement provisions, and second, by legislative history in which Congress declared that the preemptive force of § [1132(a)] was modeled on the exclusive remedy provided by § 301 of the Labor Management Relations Act, ... 29 U.S.C. § 185." *Id.* at 52, 107 S.Ct. at 1555.

With respect to the language and structure of the civil enforcement provisions, the Court stated, "[t]he civil enforcement scheme of § [1132(a)] is one of the essential tools for accomplishing the stated purposes of ERSIA." *Id.* at 52, 107 S.Ct. at 1555. Thus, an "understanding of the saving clause must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA." *Id.* The Court found that

the detailed provisions of § [1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted [29 U.S.C. § 1132(a)] ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Russell, supra*, at 146, 105 S.Ct., at 3092 (emphasis in original).

12

*Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556.

In addition, the Court concluded that ERISA's scope of preemption was to be as broad as preemption under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which occupies its field. The Court explained,

[t]he Conference Report on ERISA describing the civil enforcement provisions of § [1132(a)] says: " ... All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947."

*Pilot Life,* 481 U.S. at 55, 107 S.Ct. at 1557 (quoting H.R. Conf. Rep. No. 93-1280, p. 327 (1974), U.S. Code Cong. & Admin. News 1974, p. 5107). The Court reasoned that Congress' explicit reference to "the LMRA to describe the civil enforcement scheme of ERISA makes clear its intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § [1132(a)]." *Id.* at 56, 107 S.Ct. at 1557.

In closing, the *Pilot Life* Court summarized, stating that upon consideration of "the common-sense understanding of the saving clause, the McCarran-Ferguson Act factors, and, most importantly, the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive," Mississippi's law of bad faith is

13

not saved from preemption. *Id.* at 57, 107 S.Ct. at 1558.

As a result of *Pilot Life's* sweeping language regarding the apparent exclusivity of remedies under ERISA, courts began finding preemption in cases where the law at issue fell squarely within ERISA's saving clause, but allowed remedies inconsistent with the ERISA's civil enforcement scheme. *See, e.g., Kanne v. Connecticut General Life Insurance Company*, 867 F.2d 489 (9th Cir. 1988) (holding that to allow a state law pertaining to unfair insurance practices to preempt the civil remedies provision would be to undermine the federal scheme); *In re Life Insurance Company of North America*, 857 F.2d 1190, 1194 (8th Cir. 1988) (finding preemption in case where plaintiff was alleging violation of Missouri insurance laws, because "the remedies afforded under ERISA are exclusive, and no state law purporting to supply additional remedies will escape the preemptive effect of § 1144(a)").

## B.    The *Ward* Decision

In *UNUM Life Insurance Company of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), the Supreme Court clarified its holding in *Pilot Life*, and made clear that the Court's discussion therein (regarding the preemptive effect of § 1132(a)) was confined to the context of a state law which was <u>not</u>

14

salvaged from preemption by ERISA's saving clause.

In the *Ward* case, plaintiff had sued his employer's insurance carrier under ERISA in order to recover disability benefits. His claim, however, was submitted outside the time frame allowed under UNUM's policy. The claim was denied by UNUM as untimely. Ward sued for benefits due under 29 U.S.C. § 1132(a), arguing that UNUM's denial violated California's "notice-prejudice rule," a common law doctrine providing that an insurer's denial of a claim "based on an insured's failure to give timely notice [of a claim] requires the insurer to prove that it suffered substantial prejudice." *Ward*, 526 U.S. at 366, 119 S.Ct. at 1386 (quoting *Shell Oil Company v. Winterhur Swiss Insurance Company*, 15 Cal. Rptr. 2d 815, 845 (1st Dist. 1993)). UNUM argued that the notice-prejudice rule was preempted by ERISA. The Supreme Court disagreed. The Court analyzed the preemption question by first asking whether, under the common-sense view of the saving clause, the law regulated insurance. The court concluded that it did. *Ward*, 526 U.S. at 373, 119 S.Ct. at 1389. Next, the court considered the McCarran-Ferguson factors and found that the rule played "an integral part" in the relationship between the insured and the insurer, and was limited to the insurance industry. *Id.* at

15

375-76, 119 S.Ct. at 1389-90. Accordingly, the Court determined that the California rule fell within the savings clause.

Even so, UNUM argued that "ERISA's civil enforcement provision, § [1132(a)], preempts any action for plan benefits brought under state rules such as notice-prejudice." *Id.* at 376, 119 S.Ct. at 1391. Instead of agreeing with UNUM's contention, the *Ward* Court stated that it did not have to address that issue, because the case did not implicate it.

> Ward sued under § [1132(a)](1)(B) "to recover benefits due ... under the terms of his plan." The notice-prejudice rule supplied the relevant rule of decision for this § [1132(a)] suit. The case therefore does not raise the question whether § [1132(a)] provides the sole launching ground for an ERISA enforcement action.

*Id.* at 377, 119 S.Ct. at 1391. Thus, the Court intimated that the question of whether a state law claim saved pursuant to ERSIA's savings clause can still be preempted because it conflicts with ERISA's civil enforcement scheme remains an open issue.

In addition to the fact that Ward was not seeking remedies outside of ERSIA's civil enforcement scheme, the Court noted other important distinctions between the facts presented in *Ward* and those presented in *Pilot Life*. In footnote 7 of the opinion the Court stated:

> We discussed this issue ... [(the preemptive effect

16

of § 1132(a))] in *Pilot Life Ins. Co. v. Dedeaux*, 481
U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). <u>That case</u>
<u>concerned Mississippi common law creating a cause of</u>
<u>action for bad-faith breach of contract, law not</u>
<u>specifically directed to the insurance industry and</u>
<u>therefore not saved from ERISA preemption</u>. In that
<u>context</u>, the Solicitor General, for the United States as
*amicus curiae*, urged the exclusivity of § [1132(a)],
ERISA's civil enforcement provision, and observed that §
[1132(a)] was modeled on the exclusive remedy provided by
§ 301 of the Labor Management Relations Act, ... 29
U.S.C. § 185. The Court agreed with the Solicitor
General's submission. 481 U.S., at 52-56, 107 S.Ct.
1549. In the instant case, the Solicitor General, for
the United States as *amicus curiae*, has endeavored to
qualify the argument advanced in *Pilot Life*. *See* Brief
20-25. <u>Noting that "LMRA Section 301 does not contain</u>
<u>any statutory exception analogous to ERISA's insurance</u>
<u>savings provision," the Solicitor General now maintains</u>
<u>that the discussion of § [1132(a)] in</u> *Pilot Life* <u>"does</u>
<u>not in itself require that a state law that 'regulates</u>
<u>insurance,' and so comes within the terms of the savings</u>
<u>clause, is nevertheless preempted if it provides a state-</u>
<u>law cause of action or remedy</u>." Brief 25; *see also id.*,
at 23 ("[T]he insurance savings clause, on its face,
saves state law conferring causes of action or affecting
remedies that regulate insurance, just as it does state
mandated-benefits laws."). We need not address the
Solicitor General's current argument, for Ward has sued
under § [1132](a)(1)(B) for benefits due, and seeks only
the application of saved state insurance law as a
relevant rule of decision in his § [1132(a)] action.

*Ward*, 526 U.S. at 377 n.7, 119 S.Ct. at 1391 n.7 (emphasis
supplied).

### 1.   The exclusivity language in *Pilot Life* is limited to laws which are not within the ambit of the saving clause

Footnote 7 first distinguishes the context in which *Pilot Life*

17

and *Ward* were decided.   Unlike the instant case and *Ward, Pilot Life* involved a state law that was not rescued from preemption by ERISA's savings clause.   Other courts have deemed this to be an important distinction.   For example, in *Selby v. Principal Mutual Life Insurance Company*, No. 98 Civ. 5283RLC, 2000 WL 178191 (S.D.N.Y. Feb. 16, 2000), the plaintiffs brought suit against their insurer alleging violation of a New York statute which regulated insurance companies.   The defendant relied on *Pilot Life* for the proposition that plaintiffs' claim was due to be dismissed because plaintiffs were precluded from bringing "a civil action pursuant to state insurance law to recover benefits under an ERISA plan, or to assert their rights under such a plan, because ERISA § [1132(a)] provides the exclusive remedies for claims asserted by ERISA-plan participants."   *Id.* at \*2.    The district court disagreed, and distinguished *Pilot Life.*

> *Pilot Life* ... is not on point. <u>Plaintiffs are not suing</u>
> <u>under a state common law of general application preempted</u>
> <u>by ERISA; they are suing under a state statute</u>
> <u>specifically directed towards the insurance industry</u>
> <u>which defendant concedes is saved from preemption.</u> ...
>
> . . .
>
> [D]efendant's reliance on *Pilot Life* is misplaced since
> that case did not address the distinct question presented
> here:   whether ERISA § [1132(a)] preempts a claim based
> on a state law which regulates insurance within the

18

meaning of ERISA's saving clause. The United States
Supreme Court recently declined to address this question
in *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 376-
77 & n.7, 119 S.Ct. 1380, 1390-91 & n.7, 143 L.Ed.2d 462,
477-78 & n.7 (1999), and indicated that the question
remained unresolved...."

*Id.* at *3 (emphasis supplied). *See also Hoffman v. Empire Blue
Cross and Blue Shield*, No. 96 Civ. 5448, 1999 WL 782518, at *7 n.5
(S.D.N.Y. 1999) (holding that an ERISA plaintiff may be able to
seek a remedy provided under New York's insurance law, because
"[i]t remains an open question whether ERISA preempts causes of
action conferred by state laws that regulate insurance").

The Second Circuit has also interpreted the language in *Pilot
Life* (regarding § 1132(a)) as being limited to cases involving
state laws which are not saved pursuant to ERISA's savings clause.
*Franklin H. Williams Insurance Trust v. Travelers Insurance
Company*, 50 F.3d 144 (2d Cir. 1995). In *Franklin*, a case where
plaintiffs alleged that defendant violated a New York law requiring
that interest on the proceeds of a life insurance policy be
computed from the date of the insured's death, the Second Circuit
reversed a district court which had held that the New York law at
issue was preempted by § 1132(a), despite the fact that it fell
squarely within the savings clause of 29 U.S.C. § 1144(b)(2)(A).
The Second Circuit stated:

> [T]he district court erred in holding that ERISA's civil
> enforcement § 1132(a)(1)(B), preempts enforcement of the
> New York law, ... because such a result would be
> plausible only if the state law itself were also
> preempted. It would be quixotic to rule that a claim
> under a state statute that is saved from ERISA preemption
> ... may nonetheless be enforced only via ERISA provisions
> and remedies.  We note in this connection that in
> *Metropolitan Life* [*Insurance Company v. Massachusetts*,
> 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)],
> after finding the challenged Massachusetts statute to be
> saved from preemption by § 1144(b)(2)(A), the Court
> affirmed a state court injunction mandating compliance
> with the state law. *See* 471 U.S. at 735, 758, 105 S.Ct.
> at 2386, 2399.

*Franklin H. Williams Insurance Trust*, 50 F.3d at 151.

As *Ward* and the cases just discussed suggest, the Court's

discussion in *Pilot Life,* pertaining to the preemptive impact of §

1132(a), was confined to the context of a state law which was not

salvaged from preemption by the savings clause. Thus, *Pilot Life*

is distinguishable from the instant case, where the state law at

issue clearly falls within the ambit of ERISA's savings clause.

**2.   Considering the express language of the savings clause**

A second important fact that the *Ward* Court noted in footnote

7 pertains to the Court's conclusion in *Pilot Life* that preemption

under § 1132(a) was supported by legislative history which

indicated that "the preemptive force of § [1132(a)] was modeled on

the exclusive remedy provided by § 301 of the Labor Management

20

Relations Act, ... 29 U.S.C. § 185." *Pilot Life*, 481 at 52, 107 S.Ct. at 1555.  The *Ward* Court exposed a flaw in this proposition: the Labor Management Relations Act "does not contain any statutory exception analogous to ERISA's insurance savings provision...." *Ward*, 526 U.S. at 377 n.7, 119 S.Ct. at 1391 n.7.  Indeed, the impact of the savings clause on ERISA's civil enforcement provision is paramount to deciding the issue raised by defendant's motion to reconsider.

The plain language of the savings provision suggests that the civil enforcement scheme established under § 1132(a) is entirely subject to the preemption rules set forth in § 1144.  The words of the savings clause are worth repeating here: "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...."  29 U.S.C. § 1144(b)(2)(A) (emphasis supplied).  The phrase, "this subchapter," includes § 1132(a), ERISA's civil enforcement provisions, as well as § 1144, ERISA's preemption provisions.  Both of these sections are contained within "subchapter I — Protection of Employee Benefit Rights."  Subchapter I includes ERISA provisions spanning from 29 U.S.C. § 1001 to 29 U.S.C. § 1191(c).  Therefore, the express language of the savings clause teaches that nothing in § 1132(a), pertaining to remedies and causes of action under ERISA,

21

shall be interpreted to "relieve any person from any law of any State" that regulates insurance. According to the plain language of the statute, the savings clause saves state laws granting causes of action or affecting remedies which regulate insurance. This court's construction of the express terms of the savings clause is consistent with the Supreme Court's admonition that ERISA's preemption provisions should be read in light of the "assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that [is] the clear and manifest purpose of Congress." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Company*, 514 U.S. 645, 655, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995) (quoting source omitted); *see generally Reeves v. Ernst & Young*, 507 U.S. 170, 177, 113 S.Ct. 1163, 1168, 122 L.Ed.2d 525 (1993) (holding that where the plain language of a statute is unambiguous, that language is conclusive absent evidence of a clear legislative intent to the contrary).

Looking further at the express language of the statute also reveals that nothing in the language of the civil enforcement provision, 29 U.S.C. § 1132(a), states that the terms and provisions in that section establish or provide a preemption power separate or distinct from the preemption provision, 29 U.S.C. §

22

1144(a), itself.    Section 1144 contains the only preemption
language in the entire statute.  This fact suggests that it was the
drafter's intent that § 1144(a) would constitute the preemptive
power of the statute as a whole, as well as the preemptive effect
of each of ERISA's separate provisions.

Indeed, in *Graves v. Blue Cross of California*, 688 F. Supp.
1405 (N.D. Cal. 1988), Judge Lynch of the Northern District of
California expressed the same thought.  When considering whether a
state statute which fell within ERISA's savings provision is
nevertheless preempted because it conflicts with the civil
enforcement provisions of § 1132(a), the court stated that

> the language of the saving clause is clear: except for
> the deemer clause, "nothing in this subchapter shall be
> construed to exempt or relieve any person from any law of
> any State which regulates insurance...."   29 U.S.C. §
> 1144(b)(2)(A) (emphasis added).  ...  Since ERISA's civil
> enforcement provisions are contained in the same
> subchapter as the saving clause, *See* 29 U.S.C. § 1132,
> the plain language of the statute precludes a ruling that
> state laws falling within the boundaries of the saving
> clause are nevertheless preempted if they interfere with
> the policies underlying the exclusive civil enforcement
> scheme.    In effect, such a holding would rewrite the
> saving clause to read:    "nothing in this subchapter
> except section 1132 shall be construed to exempt or
> relieve any person from any law of any State which
> regulates insurance...."
>
>     The Supreme Court strongly indicated in *Metropolitan
> Life* that this is not the law.    "If a state law
> 'regulates insurance,'... it is not preempted.  Nothing
> in the language, structure, or legislative history of the

23

Act supports a more narrow reading of the [saving]
clause...." 471 U.S. at 746, 105 S.Ct. at 2393 (emphasis
added). ...

In this Court's view, the only way to square *Pilot
Life* with *Metropolitan Life* and the plain language of
ERISA is to read the *Pilot Life* exclusivity analysis as
merely bolstering the Court's apparent conclusion that
the Mississippi bad faith law was not insurance
regulation within the meaning of the saving clause. In
other words, the insurance regulation and exclusive
remedy discussion in *Pilot Life* are not independent,
alternative holdings, but interdependent considerations
supporting the Court's conclusion that the saving clause
does not apply. Consequently, this Court declines to
read *Pilot Life* to stand for the proposition that a state
insurance regulation is nevertheless displaced simply
because it provides a cause of action or remedy not
otherwise available under ERISA.

*Graves,* 688 F. Supp. at 1412-1413.

## V. CONCLUSION

The court concludes that plaintiff's state law bad faith

claims, which fall squarely within ERISA's savings clause, are not

preempted on the basis that they afford additional or different

remedies than those provided for in ERISA's civil enforcement

scheme, 29 U.S.C. § 1132(a). The Court bases this conclusion on

the authority cited above, as well as the plain language of ERISA's

savings clause and its civil enforcement provision. Accordingly,

this court concludes that defendant's motion to reconsider is due

to be denied. An order consistent with this memorandum opinion

will be entered contemporaneously herewith.

24

DONE this the **17th** day of July, 2001.

United States District Judge