```
                    UNITED STATES DISTRICT COURT                FILED
                    NORTHERN DISTRICT OF ALABAMA             01 OCT 12 PM 2:23
                          SOUTHERN DIVISION
                                                             U.S. DISTRICT COURT
                                                              N.D OF ALABAMA
JOSEPH R. PURSIFULL,                     )
                                         )
        Plaintiff,                       )
                                         )
vs.                                      )    Civil Action No. CV 00-S-3318-S
                                         )
UNUM LIFE INSURANCE COMPANY              )
OF AMERICA, GUARANTEE LIFE               )
INSURANCE COMPANY, CHEROKEE              )
WIRELESS SERVICES, INC.,                 )                  ENTERED
CHEROKEE CONTRACTING, INC.,              )
NETWORK CONSTRUCTION                     )                  OCT 12 2001
SERVICES, INC., CORENET                  )
SERVICES, INC., REDWOOD, INC.,           )
COLIN B. SILLERS, J. NEIL SMITH,         )
        Defendants.                      )
```

## MEMORANDUM OPINION

This action is before the court on a motion to dismiss and strike filed by defendants Redwood, Inc. and Cherokee Contracting, Inc. (doc. no. 86), and, on a motion to dismiss filed by defendants Corenet Services, Inc. and Network Services Construction, Inc. (doc. no. 97). Both motions address Count III of plaintiff's amended complaint — asserting a claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3) — and Counts XIV and XV of plaintiff's second amended complaint, asserting claims for common law and statutory bad faith, respectively. Upon consideration of the pleadings and oral arguments, the court concludes the motions are due to be granted in part and denied in part.

### I. STANDARDS

In general, a court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, "only if it is clear that no relief



could be granted under any set of facts that could be proven consistent with the allegations" of plaintiff's complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")).[1]

When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232; *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Notice pleading is all that is required: that is,

> "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. ... The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley*, 355 U.S. at 47-48, 78 S.Ct. at 103 (citation omitted); *see also* Fed. R. Civ. P. 8(a)(2).[2]

---

[1] *See also, e.g., Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992) ("A complaint may not be dismissed unless the plaintiff can prove no set of facts which would entitle him to relief."); *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.) ("[T]he 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)), *reh'g denied*, 840 F.2d 25, *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (same).

[2] Federal Rule of Civil Procedure 8(a)(2) provides: "A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief...." *See also Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997), stating:

> The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of [a plaintiff's] claim for relief. It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed

"A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)[3]).

Thus, the threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Such motions accordingly are "viewed with disfavor and rarely granted." *Brooks*, 116 F.3d at 1369 (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969), and *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)).

Rule 12(f) of the Federal Rules of Civil Procedure, pertaining to motions to strike, provides that:

> [u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Motions to strike are not favored and usually will be denied, unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *See Poston v. American President Lines, Limited*, 452 F. Supp. 568, 570 (S.D. Fla. 1978) (citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir.1962)). When reviewing a motion to strike, the court must treat

---

> to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. ...

*Id.* at 1368-69 (citation omitted).

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

3

all well-pleaded facts as admitted, and cannot consider matters beyond the pleadings. *See U.S. Oil Company, Inc. v. Koch Refining Company*, 518 F. Supp. 957, 959 (E.D. Wis. 1981).

## II. BACKGROUND

Plaintiff Joseph R. Pursifull was employed at various times by defendants Cherokee Wireless Services, Inc., Cherokee Contracting, Inc., Network Construction Services, Inc., and CoreNet Services, Inc.[4] (For convenience, the foregoing entities shall be collectively referred to as "the employer defendants.")

The employer defendants provided, at no charge to their employees, disability insurance coverage in accordance with the terms of an employee benefit plan.[5] During 1996 and 1997, the disability insurance carrier for the employer defendants was Guarantee Life Insurance Company ("Guarantee Life").[6]

At some point after the employer defendants provided such disability insurance coverage, plaintiff was diagnosed as suffering from colon and liver cancer,[7] conditions that necessitated surgery and other painful treatments. The dates of such events are not specified in the pleadings, but apparently they occurred prior to the end of 1996, because plaintiff applied for and received short-term disability benefits from Guarantee Life between November 19 and December 2, 1996, and, between April 12 and June 2, 1997.[8] Plaintiff eventually returned to work (again, on some date that

---

[4] According to Cherokee Contracting, it "transferred its assets, liabilities and business operations to defendant Cherokee Wireless ... on March 20, 1997, and later became Redwood, Inc." Motion to dismiss and to strike (doc. no. 13). The record presently before the court does not offer an explanation as to the precise relationships between or among the other employer defendants.

[5] Amended complaint (doc. no. 25), ¶ 12.

[6] *Id.* at ¶ 15.

[7] *Id.* at ¶ 13.

[8] *Id.* at ¶ 16.

4

is not specified in the pleadings), but with a guarded prognosis.[9]

The employer defendants changed long-term disability insurance carriers on January 1, 1998, switching from Guarantee Life to defendant UNUM Life Insurance Company of America ("UNUM").[10]

UNUM's disability policy contained a "continuity of coverage" provision, ostensibly entitling employees of the employer defendants to the same coverages previously provided under the Guarantee Life policy.[11] Plaintiff alleges that both Guarantee Life and UNUM "knew of [his] diagnosis and probability of long term disability."[12]

Plaintiff filed a claim for long-term disability benefits with UNUM on June 18, 1998.[13] Plaintiff's request for disability benefits was approved by a letter dated July 23, 1998, and UNUM immediately began paying plaintiff's long-term disability payments.[14]

Under the terms of UNUM's policy, plaintiff was supposed to be paid the same monthly benefit that he would have received under the predecessor Guarantee Life plan — that is, an amount equal to 60% of his basic monthly earnings.[15] UNUM's July 23, 1998 letter approving plaintiff's claim stated, however, that his benefits would be calculated at 50% of his basic monthly earnings.[16] Plaintiff challenged this discrepancy on July 30, 1998.

In response, UNUM conducted a "post-approval claim investigation concerning the

---

[9] *Id.* at ¶ 17.
[10] *Id.* at ¶ 18.
[11] *Id.*, Exhibit A (UNUM policy), at LTD-OTR-1.
[12] *Id.* at ¶ 20-21.
[13] *Id.* at ¶ 22.
[14] *Id.*, Exhibit B (Approval letter).
[15] *Id.* at ¶ 25.
[16] *Id.*

percentage of basic monthly earnings [plaintiff] should receive and ... investigated whether continuity of coverage existed."[17] During the investigation, UNUM discovered that the employer defendants had "failed to pay two months of disability premiums allowing the prior policy with Guarantee Life to lapse."[18] UNUM issued plaintiff a letter on January 19, 1999, terminating his long-term disability benefits, citing "a pre-existing condition and no continuity of coverage" as the basis for the termination.[19]

Colin B. Sillers, the President of Cherokee Wireless, admitted to plaintiff on January 4, 1999, that the company had failed to pay disability insurance premiums prior to the effective date of UNUM's policy, but promised that Cherokee Wireless would pay him the full amount of benefits he should have received under the long-term disability policy.[20] This promise was approved by the Chief Executive Officer of Cherokee Wireless, J. Neil Smith.[21] Although Sillers and Smith were aware of Cherokee Wireless' deteriorating financial condition, they failed to inform plaintiff of this condition when the promise was made.[22] As promised, Cherokee Wireless paid plaintiff 60% of his basic monthly earnings, but only for approximately ten months.[23] The company eventually entered voluntary liquidation and ceased making such payments.[24] Plaintiff received his last check from Cherokee Wireless on October 29, 1999.[25]

---

[17] *Id.* at ¶ 26.
[18] *Id.* at ¶ 29.
[19] *Id.* at ¶ 31.
[20] Second amended complaint (doc. no. 70), ¶ 37.
[21] *Id.* at ¶ 39.
[22] *Id.* at ¶ 40-41.
[23] *Id.* at ¶ 37.
[24] *Id.* at ¶ 42.
[25] *Id.*

When UNUM notified plaintiff of its decision terminating his long-term disability benefits, it also informed him of his right to appeal the decision. Plaintiff did not do so, and now alleges that two circumstances convinced him that he should not appeal UNUM's action: (1) "[t]he manner in which UNUM had denied his coverage by re-investigating his claim after [he had] questioned the benefit amount and seizing upon his employer's failure" to pay premiums; and, (2) the promise of Cherokee Wireless to rectify the situation by paying the full benefits due under the long-term disability policy.[26]

Plaintiff initiated this action on November 16, 2000.[27] He filed his first amended complaint on February 5, 2001, alleging, among other things, that the employer defendants breached their fiduciary duties by failing "to notify [him] of the failure to pay two months of disability premiums" and, thereby, depriving him of "an opportunity to pay the premiums himself and avoid a lapse in his disability benefits" (Count III).[28] Plaintiff filed a second amended complaint on June 22, 2001, adding claims against the employer defendants for wrongful termination of his long term disability benefits under an employee benefit plan governed by ERISA and for common law (Count XIV) and statutory bad faith (Count XV).[29] Plaintiff also added Redwood, Inc. to the group of employer defendants.[30]

### III. DISCUSSION

**A.   Count III of the First Amended Complaint**

The employer defendants contend that Count I of plaintiff's first amended complaint (*see*

---

[26] Amended complaint (doc. no. 25), ¶ 32.
[27] Complaint (doc. no.1).
[28] Amended complaint (doc. no.25), ¶ 51.
[29] Second amended complaint (doc. no. 70).
[30] *Id.* at ¶ 13.

7

doc. no. 25, at 5-6) asserts a claim against defendant UNUM for wrongful termination of benefits under 29 U.S.C. § 1132(a)(1)(B),[31] while Count III of that same pleading (*see* doc. no. 25, at 7-8) asserts claims against employer defendants for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3).[32] Relying on this court's application of *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), and *Katz v. Comprehensive Plan of Group Insurance*, 197 F.3d 1084 (11th Cir. 1999), in the order entered on June 21, 2001, dismissing plaintiff's claims for breach of fiduciary duty against defendant UNUM (doc. no. 68), the employer defendants argue that plaintiff is precluded from bringing a claim pursuant to § 1132(a)(3), because he has an adequate remedy under § 1132(a)(1)(B).

In *Varity*, the Supreme Court held that plan participants and beneficiaries are precluded from bringing breach of fiduciary duty and other equitable claims under § 1132(a)(3), where an adequate remedy is available under § 1132(a)(1)(B). *Varity*, 516 U.S. at 512, 116 S.Ct. at 1077-78. The Eleventh Circuit reached the same conclusion in *Katz*: *see* 197 F.3d at 1088-89.

In response, plaintiff argues that the court should construe Count III of his first amended complaint to state a claim for wrongful termination of benefits under 29 U.S.C. § 1132(a)(1)(B). Nothing in the language of 29 U.S.C. § 1332 prohibits plaintiff from maintaining claims against both

---

[31] 29 U.S.C. § 1132(a)(1)(B) provides that a civil action may be brought:

(1)    by a participant or beneficiary——
. . .
    (B)    to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan....

[32] 29 U.S.C. § 1132(a)(3) provides that a civil action may be brought:

(3)    by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

employer defendants and UNUM for wrongful termination of benefits under the same employee benefits plan. *See* 29 U.S.C. § 1132. Further, a number of courts have permitted plan beneficiaries to proceed against both employers and insurers under § 1132(a)(1)(B). *See, e.g., McNutt v. J.A. Jones Construction Co.*, 33 F. Supp. 2d 1375, 1376 (S.D. Ga. 1998) (hearing § 1132(a)(1)(B) claim against both employer and insurer); *Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield of Florida*, 942 F. Supp. 562, 568 (S.D. Fla. 1996) (same); *Brooks v. Protective Life Insurance Co.*, 883 F. Supp. 632, 633, 637 (M.D. Ala. 1995) (same); *Reed v. American Express Co.*, 863 F. Supp. 1572, 1574 (S.D. Fla. 1994) (same); *cf. Rosen v. TRW, Inc.*, 979 F.2d 191, 194-95 (11th Cir. 1992) (directing district court to vacate defendant's motion to dismiss and grant plaintiff's motion for leave to amend the complaint to add claims against former employer, employee welfare plan, and the administrative committee of the welfare plan).

Although Count III makes no reference to any specific statutory provision of ERISA, the characterization of the alleged misconduct by employer defendants as a "breach of fiduciary duty" suggests that it is brought under § 1132(a)(3). The court, however, may not grant defendant employers' motions to dismiss if the allegations contained in Count III of plaintiff's first amended complaint "provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)[33]). Assuming Count III asserts a claim under § 1132(a)(1)(B), the court finds that defendant employers' motions to dismiss are due to be denied as to Count III. Plaintiff, however, is directed to amend Count III of his first amended complaint in accordance with the court's determination.

---

[33] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Similarly, the employer defendants contend that Count XIII of plaintiff's second amended complaint (*see* doc. no. 70, at 6-7), which asserts a claim against employer defendants for wrongful termination of benefits under 29 U.S.C. § 1132(a)(1)(B), precludes Count III of plaintiff's first amended complaint, which defendants argue asserts a claim against them for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). Again, the employer defendants argue that plaintiff is precluded from asserting a claim under § 1132(a)(3), because he has an adequate remedy under § 1132(a)(1)(B).

As previously noted, the court construes Count III of plaintiff's first amended complaint to assert a claim against employer defendants for wrongful termination of benefits pursuant to § 1132(a)(1)(B). Thus, Count III asserts no claim under § 1132(a)(3). Accordingly, the motions to dismiss are due to be denied as to Count III.

Further, the court finds that the § 1132(a)(1)(B) claim asserted in Count XIII of the second amended complaint does not preclude plaintiff from alleging a § 1132(a)(1)(B) claim in Count III of his first amended complaint, because the claims arise from separate employee benefit plans.

Count III of plaintiff's first amended complaint asserts a claim against the employer defendants for their failure to notify plaintiff that they had neglected to pay two months of insurance premiums due under Guarantee Life's disability insurance policy.

> 47. Defendant Employers knew, or should have known that plaintiff could not readily know that Defendant Employers failed to pay two months of premiums causing his disability policy to lapse.
>
> 48. Under the circumstances, Defendant Employers were under a duty to disclose these material facts to plaintiff.
>
> 49. Defendant Employers suppressed these material facts.
>
> 50. As a proximate and direct result of said suppression, plaintiff was damaged.

> 51. Defendant Employers falsely and fraudulently failed to notify plaintiff of the failure to pay two months of disability premiums allowing plaintiff an opportunity to pay the premiums himself and avoid a lapse in his disability benefits.
>
> 52. Plaintiff relied upon Defendant Employers thereby allowing the grace period for payment of premiums to Guarantee Life expire and avoid having a preexisting condition under UNUM's policy.
>
> 53. The actions of Defendant Employers constitute a breach of fiduciary duty for which the plaintiff may recover the disability benefits to which he is due.
>
> WHEREFORE, plaintiff demands judgment against Defendant Employers, as follows:
>
> A. An Order compelling Defendant Employers to pay the plaintiff any and all long-term disability benefits to which he is entitled, including retroactive benefits, and an Order compelling Defendant Employers to commence paying the plaintiff the monthly benefits to which he is entitled as provided in the long-term disability plan;
>
> B. An Order requiring the Defendant Employers to pay costs and attorney's fees as allowed by law based upon the defendants' wrongful termination of the plaintiff's benefits to which he is entitled;
>
> C. To provide the plaintiff such other, further, and different relief as the evidence warrants.[34]

Count XIII of the second amended complaint asserts that the employer defendants wrongfully terminated plaintiff's long-term disability benefits under an employee benefit plan made available solely to plaintiff. Plaintiff contends the employer defendants established this separate employee benefit plan on January 4, 1999, when defendant Sillers promised plaintiff that Cherokee Wireless would pay him the full benefits under the long-term disability policy.

> 123. On or about January 4, 1999, Defendant Employers established an employee benefit plan for the purpose of providing Mr. Pursifull with long-term disability benefits.
>
> 124. Defendant Employers provided disability benefits to Mr. Pursifull at no

---

[34] Amended complaint (doc. no. 25), ¶¶ 47-53.

charge to him. These benefits are derived from an employee benefit plan governed by ERISA, 29 U.S.C. § 1001 *et seq.* Mr. Pursifull was a participant under the employee benefit plan.

125. Defendant Employers wrongfully terminated plaintiff's long-term disability benefits after paying such benefits for approximately ten months.

126. Mr. Pursifull is entitled by reason thereof to sue for and now recover all monthly payments he would be entitled to receive had the Defendant Employers not wrongfully terminated his benefits. Plaintiff is entitled to recover the maximum benefit payment under said plan.

WHEREFORE, plaintiff demands judgment against Defendant Employers, as follows:

A. An Order compelling Defendant Employers to pay the plaintiff any and all long-term disability benefits to which he is entitled, including retroactive benefits, and an Order compelling Defendant Employers to commence paying the plaintiff the monthly benefits to which he is entitled as provided in the long-term disability plan;

B. An Order requiring the Defendant Employers to pay costs and attorney's fees as allowed by law based upon the Defendant Employer's wrongful termination of the plaintiff's benefits to which he is entitled;

C. To provide the plaintiff such other, further, and different relief as the evidence warrants.[35]

Accordingly, the motions to dismiss are due to be denied as to Count III.

**B.      Counts XIV and XV of the Second Amended Complaint**

Counts XIV and XV of plaintiff's second amended complaint allege the employer defendants committed common law and statutory bad faith. As a matter of Alabama law, the tort of bad faith applies only to claims asserted by an insured plaintiff against the insurance company that issued the policy under which claims were denied, allegedly in bad faith. *See American Cast Iron Pipe Co. v. Williams*, 591 So. 2d 854, 857 (Ala. 1991). Plaintiff concedes that Counts XIV and XV fail to state

---

[35] Second amended complaint (doc. no. 70), ¶¶ 123-26.

a claim upon which relief can be granted, because none of the employer defendants are an insurance company. Accordingly, the motions to dismiss are due to be granted as to Counts XIV and XV.

An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **12th** day of October, 2001

_____
United States District Judge