# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JUDY D. PURSIFULL, duly appointed executor of the estate of Joseph P. Pursifull, deceased,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No.: 2:00-CV-3318-VEH** ) |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA, et al.,** | ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*  Plaintiff Joseph P. Pursifull ("Pursifull"), initiated this action on November 16, 2000.  (Doc. #1).  On September 17, 2002, Judy D. Pursifull was substituted as the party plaintiff in her position as the executor of Pursifull's estate.  The undersigned inherited this case by way of reassignment on June 28, 2004.  (Doc. #314).

Pursifull initially brought his suit against the following nine (9) defendants: (1) Unum Life Insurance Company of America ("Unum"), (2) Guarantee Life Insurance Company ("Guarantee Life"), (3) Cherokee Wireless Services, Inc.

("Cherokee Wireless"), (4) Cherokee Contracting, Inc. ("Cherokee Contracting"), (5) Network Construction Services, Inc. ("Network"), (6) Corenet Services, Inc. ("Corenet"), (7) Redwood, Inc. ("Redwood"), (8) J. Neil Smith ("Smith"), and (9) Colin B. Sillers ("Sillers").

### A.    Cherokee Wireless

On May 4, 2001, the court entered a default against Cherokee Wireless because of its failure to appear or otherwise defend itself in this action.  (Doc. #62).  The order gave Pursifull leave to prove his damages.  (*Id.*).  Subsequently, on May 14, 2002, the clerk entered a second default against Cherokee Wireless.  (Doc. #247).

### B.    Cherokee Contracting and Redwood

The court dismissed Cherokee Contracting and Redwood as defendants with prejudice on February 1, 2002 (Doc. #156), pursuant to the parties' joint stipulation (Doc. #155) filed on January 31, 2002.  Consequently, Cherokee Contracting and Redwood are no longer parties to this lawsuit.

### C.    Smith and Sillers

The court also dismissed the individual defendants, Smith and Sillers, on January 17, 2002 (Doc. #154), pursuant to the parties' joint stipulation agreeing to a dismissal of them with prejudice (Doc. #153) filed on January 9, 2002.  Accordingly, neither Smith nor Sillers remains in this case.

2

**D.    Network and Corenet**

Although appearing through counsel and defending claims during the initial phase of this lawsuit, Network and Corenet are no longer represented by any attorney. More specifically, on October 25, 2006, the court margin granted Pat Clotfelter, Harriet Thomas Ivy, and the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.'s Renewed Motion to Withdraw.  (Doc. #337).  Subsequently, on November 9, 2006, the court margin also granted Ellen H. Dover's Motion to Withdraw from representing both defendants.   (Docs. #340).   Prior to these withdrawal orders, Network and Corenet filed a Motion for Summary Judgment (Doc. #178) on March 22, 2002, and a second one (Doc. #250) on May 21, 2002. Subsequently, on March 31, 2005, pursuant to Pursifull's motion (Doc. #318), the court stayed the case as a result of Pursifull's decision to participate in a claims reassessment process before Unum.

Upon conclusion of the claims reassessment process, on October 10, 2006, the court lifted the stay and denied without prejudice Network and Corenet's Motions for Summary Judgment and allowed them (along with Unum and Guarantee Life) the opportunity to refile their motion within thirty (30) days.  (Doc. #333).  Neither Network nor Corenet refiled or renewed a summary judgment motion, and both parties remain in the case unrepresented.

3

### E.    Unum and Guarantee Life

However, Unum and Guarantee Life did elect to reseek summary judgment. Therefore, pending before the court are Unum's Supplemental Motion for Summary Judgment (Doc. #338) filed on November 8, 2006, and Guarantee Life's Motion for Summary Judgment (Doc. #342) filed on November 9, 2006.   For the reasons explained below, both Unum's Supplemental Motion for Summary Judgment and Guarantee Life's Motion for Summary Judgment are due to be granted.

## II.    STATEMENT OF FACTS[1]

### A.    Pursifull's Work and Medical History with Cherokee Contracting

Pursifull went to work for Cherokee Contracting in March 1996.  (Doc. #254 (Joint Stipulation of Undisputed Facts filed by all parties on May 28, 2002) ¶ 3). Pursifull received $750.00 per week from Cherokee Contracting.  (Doc. #254 ¶¶ 3-4).

Cherokee Contracting obtained group disability insurance coverage for its employees from Guarantee Life.  (Doc. #254 ¶¶ 5-8, 11).  The effective date of

---

[1]Many of the following facts are derived from the parties' Joint Stipulation of Undisputed Facts (Doc. #254) filed on May 28, 2002.  Whenever the facts are in dispute, they are stated in the manner most favorable to the non-moving party.  *See Fitzpatrick*, 2 F.3d at 1115, *infra* § III at 15.  Therefore, these are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

coverage under the Guarantee Life group disability insurance policy (the "Original Policy") was June 1, 1996.  (Doc. #254 ¶ 8).  Under the Original Policy, employees such as Pursifull were not entitled to convert from group to individual disability coverage (either when leaving the company or when the group coverage otherwise terminated) or to keep the group coverage in force by personally making the premium payments.  (Doc. #254 ¶ 5).

Pursifull was diagnosed with cancer on October 29, 1996, and underwent surgery.  (*Id.* ¶¶ 14-15).  Pursifull subsequently made a claim for short-term disability benefits under the Original Policy with Guarantee Life, which was approved.  (*Id.* ¶¶ 15-17).  After this initial period of disability, Pursifull returned to work.  (*Id.* ¶ 19).

**B.     Pursifull's Work and Medical History with Cherokee Wireless**

Cherokee Wireless  acquired Cherokee Contracting in March 1997.  (*Id.* ¶ 18). Pursifull became an employee of Cherokee Wireless in the same capacity and with the same job duties that he had been employed with Cherokee Contracting.  (Doc. #174 at Ex. B. (Pursifull Dep.) at 128-29).

Pursifull underwent additional treatment for cancer in March 1997, and made another claim for short-term disability benefits under the Original Policy with Guarantee Life, which was approved.  (Doc. #254 ¶ 19).  Pursifull returned to work

after this second period of disability in about June 1997.  (*Id.* ¶ 19).

## C.    Cherokee Wireless's Original Policy with Guarantee Life

In November and December 1997, Cherokee Wireless failed to make premium payments for the Original Policy providing coverage to its employees (including Pursifull).  (Doc. #254 ¶ 20; Doc. #174 at Ex. D (Guarantee Life Notice of Group Policy Termination)).  On December 19, 1997, Guarantee Life sent a Notice of Group Policy Termination to Cherokee Wireless, informing Cherokee Wireless that the group policy "automatically terminated for non-payment of premium" effective November 1, 1997  (the "Termination Notice").  (Doc. #174 at Ex. D; Doc. #177 at Ex. A (Harpster Aff.) ¶ 12).   Pursifull testified that no one advised him of the termination of the Original Policy with Guarantee Life.  (Doc. #174 at Ex. B at 297).

Tammy Giles ("Giles"), the former administrator of Cherokee Wireless's short term and long term disability plans, denied ever seeing the Termination Notice while she was still employed there.   (Doc. #177 at Ex. C (Giles Aff.) ¶¶ 13, 15; Doc. #254 ¶ 6 ("In its Group LTD Application to Guarantee Life, Cherokee Contracting identified Tammy Giles as the 'person responsible for plan administration.'")).  However, she did recall receiving an earlier  payment coupon indicating that "a premium was then 'due by . . . 12/1/97[.]'" (Doc. #177 at Ex. C ¶ 14(a)) and generally acknowledged that such types of insurance documents would have been received and

maintained in the ordinary course of business.  (Doc. #254 ¶ 21).

Giles also clarified that, while she might periodically indicate her approval for a premium payment to Guarantee Life by putting her inscription on the business record, such as she did with the payment coupon referenced above, she "did not exercise any authority for the actual payment and signing of checks for payment[,]" or for reinstating a lapsed insurance policy.  (Doc. #177 at Ex. C ¶¶ 17(b), 15(d)). Accordingly, she is without "actual knowledge of which [Cherokee] Wireless official made the decision not to pay any Guarantee [Life] disability premium coming due around November or December of 1997."  (Doc. #177 at Ex. C ¶ 18).

Relatedly, the Termination Notice was contained in a set of documents received by Pursifull in response to a non-party subpoena issued to Wayne Carr, the liquidating manager for Cherokee Wireless following its liquidation.  (Doc. #254 ¶ 22).  Mr. Carr personally selected the business records to be retained and made arrangements to house them at the Atlanta Data Storage facility in Norcross, Georgia. (*Id.* ¶ 23).  The parties agree that the integrity of these documents has not been compromised while under Mr. Carr's custody and control.  (*Id.*).

### D.   Cherokee Wireless's Group Disability Insurance with Unum

Subsequent to the termination of the Guarantee Life Original Policy, Cherokee Wireless obtained a group disability insurance policy through Unum (the "Unum

Policy"). (Doc. #254 ¶ 26). The effective date of the Unum Policy was January 1, 1998. (*Id.*).

After undergoing additional medical treatment, Pursifull submitted a claim for long-term disability benefits to Unum on June 18, 1998. (Doc. #254 ¶¶ 39-40). On July 23, 1998, Unum approved Pursifull's claim for benefits. (Doc. #254 ¶ 42). Unum's July 23, 1998 letter informed Pursifull that he would receive 50% of his monthly earnings, less offsets for other income such as Social Security benefits. (Doc. #254 ¶ 42; Doc. #174 at Ex. I).

Believing he was entitled to 60% of his monthly earnings rather than 50%, Pursifull contacted Serena Tankersley ("Tankersley") at Cherokee Wireless. (Doc. #174 at Ex. B at 209-10). Tankersley informed Pursifull that Cherokee Wireless had given Unum the wrong prior policy. (*Id.* at 211-12). Instead of sending Unum the prior Guarantee Life Original Policy, Cherokee Wireless had sent Unum a Jefferson-Pilot policy for Cherokee Wireless's sister company, Network Construction, under which participants received benefits in an amount equal to 50% of their monthly earnings. (Doc. #174 at Ex. B at 36, 164, 210-11; Doc. #174 at Ex. J (June 22, 1998 facsimile)). Pursifull admitted during his deposition that 50% was the correct benefit amount based upon the information provided to and known to Unum when it began making benefit payments to Pursifull in 1998. (Doc. #174 at Ex. B at

165).

Pursifull called Unum to inquire about the benefit amount.  (Doc. #254 ¶ 43).
In response to Pursifull's call, Unum researched the Original Policy to determine the
correct benefit amount.  (Doc. #174 at Ex. B at 166; Doc. #174 at Ex. L (January 19,
1999 letter from Unum to Pursifull)).  During its investigation, Unum learned that the
Guarantee Life Original Policy had terminated for non-payment of premium on
November 1, 1997, two months before the effective date of the Unum Policy.  (Doc.
#174 at Ex. L).

> **E.  Unum Policy Benefits to Pursifull End Due to Pre-existing
> Condition and Break in Coverage Provisions**

The Unum Policy had a pre-existing condition exclusion.  (Doc. #254 ¶ 37).
According to that provision, a participant had a pre-existing condition if:

> - you received medical treatment, consultation, care or services
> including diagnostic measures, or took prescribed drugs or medicines in
> the 3 months just prior to your effective date of coverage; and

> - the disability begins in the first 12 months after your effective
> date of coverage.

(*Id.*).

The Unum Policy also had a continuity of coverage provision.  (*Id.* ¶ 38).
According to that provision, disabilities caused by pre-existing conditions were
covered  if (1) the claimant was in active employment and insured under the Unum

9

Policy on its effective date, and (2) the claimant was insured by a prior policy at the time of the change in coverage to the Unum Policy.  (*Id.*).

It is undisputed that the Guarantee Life Original Policy terminated for non-payment of premium two months before the effective date of the Unum Policy. (Doc. #254 ¶ 26; Doc. #174 at Exs. D, L).  Consequently, Pursifull was not eligible for continuity of coverage under the Unum Policy.  (Doc. #174 at Ex. G at LTD-OTR-1-2; Doc. # 174 at Ex L).  Pursifull acknowledged during his deposition that it was Cherokee Wireless's responsibility to make premium payments to Guarantee Life, and that Cherokee Wireless's failure to make the premium payments caused the Guarantee Life Original Policy to terminate two months before the effective date of the Unum Policy.  (Doc. #174 at Ex. B at 268-69).

Unum informed Pursifull on January 19, 1999, that he was not entitled to benefits because his disability was caused by a pre-existing condition and the continuity of coverage provision did not apply because of the gap in coverage resulting from the termination of the Guarantee Life Original Policy.  (Doc. #254 ¶¶ 45-46; Exhibit L).  Pursifull understood the basis for Unum's decision.  (Doc. #254 ¶ 45; Doc. #174 at Ex. B at 254-55).  Unum's last benefit payment to Pursifull was in December 1998.  (Doc. #174 at Ex. B at 226-27).

Unum informed Pursifull that he had sixty days to appeal the claim decision.

10

(Doc. #254 ¶ 47).  Pursifull, however, did not appeal the claim decision.  (Doc. #254 ¶ 47; Doc. #174 at Ex. B at 64-66, 193-94).

### F.   Cherokee Wireless Covers Pursifull's Benefit Payments until Declaring Bankruptcy

Pursifull spoke to Sillers (CEO of Cherokee Wireless) and Tankersley about the situation before he received Unum's denial letter.  (Doc. #174 at Ex. B at 62). Sillers told Pursifull that his loss of  disability benefits was due to Cherokee Wireless's mistake of failing to make the required premium payments to Guarantee Life under the Original Policy.  (Doc. #254 ¶ 48; Doc. #174 at Ex. B at 60-61; Doc. #174 at Ex. N (Sillers Dep.) at 65-66, 81-83, Exs. 1-3).  Sillers further told Pursifull that Cherokee Wireless accepted full responsibility for the gap in coverage resulting from the termination of the prior Guarantee Life Original Policy, and that Cherokee Wireless would therefore pay disability benefits to Pursifull.  (Doc. #254 ¶ 48; Doc. #174 at Ex. B at 13-14, 182-83; Doc. #174 at Ex. N at 82-83).

Cherokee Wireless began making benefit payments to Pursifull in January 1999, the month after Unum's last payment.  (Doc. #254 ¶ 49).  Thus, there was no gap in payments to Pursifull.  (*Id.*).  In addition, Cherokee Wireless paid Pursifull more than he had been receiving from Unum because Cherokee Wireless did not reduce the payments by the amount of Social Security benefits Pursifull was

receiving, as the Unum Policy required Unum to do.  (*Id.*).

Cherokee Wireless made disability benefit payments to Pursifull until it declared bankruptcy ten (10) months later.  (Doc. #254 ¶ 51; Doc. #174 at 14). Pursifull received his last payment from Cherokee Wireless on October 29, 1999. (Doc. #254 ¶ 51).

### G.    Pursifull's Subsequent Work History

Approximately six months later, in April or May 2000, Pursifull went to work for Appalachian Contracting and performed basically the same duties he had performed for Cherokee Wireless.  (Doc. #254 ¶ 52; Doc. #174 at Ex. B at 81-82). Thus, Pursifull was out-of-work from January 23, 1998, until April or May 2000. (Doc. #254 ¶¶ 39, 52; Doc. #174 at Ex. B at 81-82).

Pursifull left his job at Appalachian Contracting around August 2000, and took a job with Hardy Engineering.  (Doc. #254 ¶ 52; Doc. #174 at Ex. B at 139).  Pursifull earned $1,200.00 per week with Hardy Engineering, which was more than he earned with Cherokee Contracting.  (Doc. #174 at Ex. B at 110; Doc. #254 ¶ 3).  Pursifull stopped working in about October 2001.  (Doc. #174 at Ex. B at 343, 347).  Hardy Engineering nevertheless continued to pay Pursifull his full salary of $1,200.00 per week, and continued to provide Pursifull with health insurance.  (Doc. #174 at Ex. B at 347).

### H.    Summary of Pursifull's Paid and Unpaid Benefits

Even if Pursifull had been entitled to benefits under the Unum Policy, benefits would have ended when he returned to work in April or May 2000. (Doc. #174 at Ex. G at LTD-BEN-1, 3). Pursifull was not "disabled" according to the unambiguous terms of the Unum Policy when he returned to work full-time in April or May 2000. (*Id.* at LTD-BEN-1).

Cherokee Wireless paid short-term disability benefits to Pursifull from January 23, 1998, to April 24, 1998. (Doc. #254 ¶ 39). Unum paid long-term disability benefits to Pursifull from April 23, 1998, to December 23, 1998. (Doc. #254 ¶ 44). Cherokee Wireless then paid disability benefits to Pursifull from January 1999, to October 1999. (*Id.* ¶¶ 49, 51). Consequently, the potential benefit period at issue in this lawsuit is the period between Cherokee Wireless's last payment to Pursifull in October 1999, and Pursifull's return to work in April or May 2000. (Doc. #254 ¶¶ 49, 51-52; Doc. #174 at Ex. B at 81-82; Doc. #174 at Ex. G at LTD-BEN-1).

## III.    BURDEN ON SUMMARY JUDGMENT[2]

---

[2]Because the court's role in ERISA cases is more akin to an appellate one, the scope of its review on summary judgment is notably different than when it sits as a trial court. *See Providence v. Hartford Life & Accident Ins. Co.*, 357 F. Supp. 2d

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See id.* at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could

---

1341, 1342 n.1 (M.D. Fla. 2005) ("[T]he Court's task is to review the benefit decision based on the administrative record available to the decision maker at the time he or she made the decision.").

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

15

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV.   ANALSYIS

### A.   Unum's Supplemental Motion for Summary Judgment

#### A.   Administrative Exhaustion

Because, as discussed below, the court concludes that Unum is entitled to summary judgment relating to its denial of ERISA benefits to Pursifull, it does not reach the merits of Unum's argument that it is entitled to summary judgment on the basis of Pursifull's failure to exhaust his administrative remedies in connection with his claim.

### B.    Denial of ERISA Benefits

#### 1.    ERISA standard of review

In *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004), the Eleventh Circuit set forth a six-step model for use in judicially reviewing virtually all ERISA claim denials:

> (1)    Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision; if it is not, then end the inquiry and affirm the decision).

> (2)    If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3)    If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4)    If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)     If there is no conflict, then end the inquiry and affirm the decision.

(6)     If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams*, 373 F.3d at 1138 (footnotes omitted).

Unum maintains that under the applicable plan documents it has discretionary power that is subject to the arbitrary and capricious standard of review. Discretion sufficient to trigger the arbitrary and capricious standard of review exists if "the plan documents grant the claims administrator discretion to interpret disputed terms." *HCA Health Serv. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001). For example, in *HCA Health Serv.*, the Eleventh Circuit held that the following policy language provides such discretion:

> With respect to paying claims for benefits under this policy, WE [EHI] as administrator for claims determinations and as ERISA claims review fiduciary ... shall have discretionary authority to 1) interpret policy provisions, 2) make decisions regarding eligibility for coverage and benefits, and 3) resolve factual questions relating to coverage benefits.

*Id.* at 995.

The court agrees that the Unum Policy gives Unum similar discretionary authority. (Doc. #174 at Ex. G). More specifically, on page CC.FP-1, the Unum Policy directs as follows:

18

> When making a benefit determination under the policy, UNUM
> has discretionary authority to determine your eligibility for benefits and
> to interpret the terms and provisions of the policy.

(*Id.*).  Therefore, the Unum Policy bestows Unum with the discretion to (1) determine

eligibility for benefits, and (2) interpret the Unum Policy's terms and provisions.  (*Id.*

at CC.FP-1.)  Accordingly, the Unum Policy grants Unum with the discretionary

authority sufficient to trigger the arbitrary and capricious standard of review.  *See*

*HCA Health Serv.*, 240 F.3d at 993.

## 2.    Application of *de novo* review

However, even if Unum was bestowed with a lesser degree of discretionary

authority to determine claims, it would still be entitled to summary judgment because

even under a *de novo* review test, Unum's decision to deny benefits was correct.  To

elaborate, Unum's claim decision was not "wrong" because Pursifull's disability was

caused by a non-covered, pre-existing condition.  According to the unambiguous

terms of the Unum Policy, a claimant has a pre-existing condition if (1) he or she

"received medical treatment, consultation, care or services including diagnostic

measures . . . in the 3 months just prior to [the] effective date of coverage[,]" and (2)

"the disability begins in the first 12 months after the effective date of coverage."

(Doc. #254 ¶ 37).

It is undisputed that Pursifull received medical treatment in the three (3)

months prior to the effective date of the Unum Policy. On October 16, 1997, Dr. Heslin treated Pursifull for the very condition that served as the basis for Pursifull's disability claim. (Doc. #174 at Ex. L). October 16, 1997, is within three (3) months of January 1, 1998, the effective date of the Unum Policy. Furthermore, given that Pursifull submitted his claim for benefits to Unum in June 1998, it is undisputed that Pursifull sought benefits within the first twelve (12) months after the January 1, 1998 effective date of the Unum Policy. (Doc. #254 ¶ 40). It is, therefore, undisputed that, by the Unum Policy definition, Pursifull's disability was caused by a pre-existing condition.

Similarly, the continuity of coverage provision in the Unum Policy was ineffective to provide coverage for Pursifull's pre-existing condition because it was rendered inapplicable by the November 1, 1997 termination of the Guarantee Life Original Policy. According to the continuity of coverage provision in the Unum Policy, pre-existing conditions were covered if (1) the claimant was in active employment and insured under the Unum Policy on its effective date, and (2) the claimant was insured by a prior policy at the time of the change in coverage to Unum. (Doc. #254 ¶ 38). It is undisputed that the Guarantee Life Original Policy terminated on November 1, 1997, two (2) months before the effective date of the Unum Policy, due to Cherokee Wireless's non-payment of premiums. (Doc. #174 at Ex. D). As a

result, Pursifull was not insured by the Guarantee Life Original Policy at the time Cherokee Wireless acquired the Unum Policy. Thus, the continuity of coverage provision in the Unum Policy was inapplicable and Pursifull's disability, which was caused by a pre-existing condition, was not covered. Accordingly, Unum's decision to deny Pursifull's claim upon its investigation is consistent with the unambiguous terms of the Unum Policy and, therefore, even under the more stringent *de novo* review, the court concludes that Unum's decision was legally correct and is due to be affirmed. Furthermore, because of the court's *de novo* determination to uphold Unum's decision, under the model set forth in *Williams*, the court's analysis of Pursifull's ERISA benefits claim ends here. Accordingly, Unum's Supplemental Motion for Summary Judgment is due to be granted.

### B.    Guarantee Life's Motion for Summary Judgment

####    1.    Background to Pursifull's breach of fiduciary claim relating to lack of notice

Pursifull's claim against Guarantee Life is for breach of fiduciary duty. (*See generally* Doc. #25 ¶¶ 54-61; *id.* ¶ 61 ("The actions of defendant Guarantee Life constitute a breach of fiduciary duty for which the plaintiff may recover the disability benefits to which he is due.")). Pursifull alleges that Guarantee Life improperly neglected to notify him about his employer's failure to make premium payments and

prevented him from paying the premium personally to avoid a lapse in coverage. (*Id.* ¶ 59).  As legal authority to support his breach of fiduciary claim, Pursifull relies upon *Willett v. Blue Cross and Blue Shield of Alabama*, 953 F.2d 1335 (11th Cir. 1992), in which the Eleventh Circuit concluded that an insurer could be held liable for the failure to notify participants about a nonpayment of premiums by an employer under either "section 1105(a)(3), under section 1105(a)(1), or under both sections." *Willett*, 953 F.2d at 1342.

More specifically, to establish liability consistent with *Willett*, a plaintiff would need to show "(1) that [the insurer fiduciary] was aware of [the employer's] breach of its fiduciary duties and that it failed to take reasonable steps to remedy [the employer's] breach or (2) that [the insurer fiduciary] knowingly concealed or participated in [the employer's] breach of the duty." *Id.*  However, *Willett* involved a situation in which the duty to notify had been expressly delegated by the insurer fiduciary to the employer while the parties are in agreement that here "Guarantee Life did not expressly delegate to Cherokee [Wireless] the responsibility for providing notice to plan participants in its Policy."  (Doc. #365 at 17; *see also* Doc. 345 at 23 ("As discussed above, neither party assumes <u>any</u> duties in the contract with respect

22

to the notice to employees of possible termination causing a lapse in coverage.")).[3]

In *Willett*, the Eleventh Circuit directly drew a distinction between cases involving an express delegation of such a duty and those without any such provision in play, pointing to *McNeese v. Health Plan Marketing, Inc.*, 647 F. Supp. 981 (N.D. Ala. 1986), as an example within that later category. *Willett*, 953 F.2d at 1342 n.7.

Turning to *McNeese*, the district court, in determining that a fiduciary could be held liable for the failure to provide notice, explained:

> Several courts have held that at a minimum, the fiduciary under ERISA has an obligation to notify the employees of the employer's failure to contribute to the pension fund as required by the pension agreement. *See, e.g., Rosen v. Hotel and Restaurant Employees and Bartenders Union*, 637 F.2d 592, 600 (3d Cir. 1981), *Aitken v. I.P. & G.C.U.-Employer Retirement Fund*, 604 F.2d 1261, 1271 (9th Cir. 1979); *Phillips v. Kennedy*, 542 F.2d 52, 55 n.8 (8th Cir. 1976); *Pension Benefit Guaranty Corp. v. Greene*, 570 F. Supp. 1483 (W.D. Pa. 1983), *aff'd*, 727 F.2d 1100 (3d Cir. 1984). *Greene* involved an employee pension trust where funds were being diverted and mismanaged. The trustees of the plan knew that corporate employers were failing to make their required contributions; however, they did not notify the pensioners of the delinquency. 570 F. Supp. at 1499. The court held that the trustees had a fiduciary obligation to inform the pensioners of the delinquencies. *Id.*

*McNeese*, 647 F. Supp. at 985-86. Although *McNeese* involved liability based upon

---

[3]Under the Original Policy, Guarantee Life did have an express duty to provide Cherokee Wireless with a 60-day notice of termination. (Doc. #345 at 23). However, the Original Policy is silent as to any assignment of the duty to provide similar notice to the employees of Cherokee Wireless.

a lack of notice pertaining to an employee medical and accidental benefits fund, the same rationale applies equally to notice owed to participants in a plan providing for group disability benefits, especially given the Eleventh Circuit's reference to the decision without any limiting qualifications. *See also Hope Center, Inc. v. Well America Group, Inc.*, 196 F. Supp. 2d 1243, 1248-49 (S.D. Fla. 2002) ("Moreover, a 'fiduciary's failure to notify participants and beneficiaries of a plan's financial problems, where they are apparent to the fiduciary, is a breach of fiduciary duty.'") (citations omitted); *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan & Trust*, 650 F. Supp. 359, 377 (N.D. Ga. 1986) ("[Fiduciaries] Edmondson and Zilm did not inform the participants of the deteriorating financial status of the company and the potential effect on their trust assets, or th[at] the company had ceased contributing to the plans.").[4]

Also, as to the failure to provide notice of non-funding, the defendants' liability in *McNeese* was based upon their roles as fiduciaries to the plan. Similarly, Guarantee Life was a fiduciary of the Cherokee Wireless plan;[5] therefore, consistent

---

[4]District court decisions, even from within the Eleventh Circuit, are not controlling precedent, but rather are persuasive authority for this court to consider.

[5]Guarantee Life does not maintain that it was not a fiduciary at all, but rather disputes that "it was a fiduciary for the purposes of providing notice of plan termination." (Doc. #343 at 26-27) (citation omitted). At least one court has observed that the framing of the issues in *Willett* imply that Blue Cross never

with *McNeese*, Pursifull can, in this court's view, potentially state a claim against Guarantee Life for its breach in failing to communicate the lapse in payment to Cherokee Wireless's employees, in the absence of a specific delegation of that duty.

Furthermore, the court agrees with Pursifull that the Fourth Circuit's non-binding decision in *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir. 1992) is significantly distinguishable. Unlike the more murky situation here, the duty to provide notice firmly rested with the employer in *Coleman* based upon the written plan documents. (Doc. #345 at 23); *see also Coleman*, 969 F.2d at 61 ("To the extent that the relevant documents make an allocation of a duty to provide notification of major changes or events, that duty plainly rests with Roofing Concepts."); *Coleman*, 969 F.2d at 61 ("[T]he final policy also assigned notice and recordkeeping responsibilities to Roofing Concepts, including the obligation to keep complete records with regard to each person's insurance, to distribute to each eligible employee information regarding the program, and to report changes in eligibility status to Nationwide.").

---

contested the issue of its fiduciary duty to provide notice to Mays' employees. *See Tregoning v. American Community Mut. Ins. Co.*, 815 F. Supp. 1054, 1061 (W.D. Mich. 1992) ("The *Willett* court, however, did not address the predicate issue of whether the party charged with liability under 29 U.S.C. § 1105(a) was an ERISA fiduciary under 29 U.S.C. § 1002(21)(A). Apparently, the fiduciary status of that defendant was not disputed in *Willett*.").

In sharp contrast, the relevant documents in this case only speak to Guarantee Life's duty to notify Cherokee Wireless about termination and do not address who bears the responsibility for providing notice to employees. Moreover, *Willet* recognizes that, within the Eleventh Circuit, while a primary duty to provide employee notice may rest with the employer of a plan, liability for breach of that duty may still exist with a fiduciary insurer. *Id.*, 953 F.2d at 1340. Therefore, the court declines to grant Guarantee Life summary judgment on the basis Pursifull cannot state a breach of fiduciary duty claim against it.

### 2. Pursifull cannot show causation as to his damages.

However, this court does not need to reach a final decision as to the threshold question of whether the duty to notify individual participants rests with Cherokee Wireless, Guarantee Life, or both because it concludes that even if Guarantee Life could be held liable for breach of fiduciary duty for its failure to directly notify Pursifull about his employer's non-payment, his claim against it would still fail for causation reasons. More specifically, in the absence of a conversion provision available under the Original Policy, any notice to Pursifull would have been futile because he could not have made individual premium payments to prevent the Original Policy with Guarantee Life from lapsing. Additionally, obtaining replacement

disability insurance coverage was not a viable alternative for him either.

To elaborate, Cherokee Contracting, when setting up the Original Policy, affirmatively chose one without an individual conversion feature. (Doc. #177 at Ex. A (Harpster Aff.) at Ex. 1 at GLI00048 (Application for Group Long Term Disability Insurance ¶ 21(J)); Doc. #254 ¶ 5). Pursifull does not dispute the lack of this optional election in opposing summary judgment; instead, he acknowledged during his deposition that, in the absence of a conversion privilege, making payments himself would not have been possible. (Doc. #174 at Ex. B at 290, 301-02). This means that even with prior knowledge of Cherokee Wireless's failure to make premium payments, Pursifull would not have been able to convert the Original Policy to an individual one as alleged in his complaint. (Doc. #25 ¶ 59). Nor does the record allege, much less show, that had he received actual notice, Pursifull would have been able to obtain a substitute disability insurance policy, given his advanced colon and liver cancer. (Doc. #343 at 30). Therefore, to permit a breach of fiduciary duty claim to stand against Guarantee Life would amount to liability without any causal connection to its actions.[6]

_____

[6]Pursifull's reliance upon Giles's testimony that she did not receive the Termination Notice is similarly causally flawed because she did not have the authority to make a payment or reinstate the Original Policy. (Doc. #177 at Ex. C ¶¶ 17(b), 15(d)). Therefore, neither her nor Pursifull's knowledge of their employer's non-payment is material because neither one could have cured the default or

Neither *Willett* nor *McNeese* is inconsistent with the court's conclusion as to the element of causation in this case.  In *Willett*, the Eleventh Circuit explained its basis for denying summary judgment on the issue of causation:

> Assuming for the moment that beneficiaries made the specific and pointed inquiries about their health insurance coverage to Blue Cross that they allege they made (and thus, that Blue Cross knew about Mays' breach), the beneficiaries could have sought alternative coverage if Blue Cross, in response to the beneficiaries' queries, had informed the beneficiaries that their coverage was suspended and subject to retroactive cancellation. At a minimum, the beneficiaries might have elected to delay elective medical treatments had they known that they were without health insurance. In order to prevail on this issue as a matter of law at this stage of the proceedings, *i.e.*, in order to obtain not only a reversal of the summary judgment for the beneficiaries, but also a grant of summary judgment in its favor, Blue Cross would have had to establish the absence of causation by proving that the beneficiaries' claimed losses could not have resulted from Blue Cross' failure to cure Mays' breach.  Because Blue Cross has not done this, it is not entitled to summary judgment on this ground.

*Id.* at 1343 (footnote omitted).  Similarly, in *McNeese*, which involved "a qualified

---

otherwise secured continuity of disability coverage for Pursifull.  Relatedly, Pursifull has not adduced sufficient evidence  from which a reasonable trier of fact could find that the Guarantee Life Original Policy lapsed due to inadequate notice.  Instead, the evidence points to Cherokee Wireless's own mistake or its inability to pay due to its financial difficulties as the basis for the lapse.  (*See, e.g.*, Doc. #254 ¶ 48 ("Sillers, as President of Cherokee Wireless, accepted responsibility for the inadvertent failure to pay premiums."); Doc. #177 at Ex. C ¶ 18 ("I [*i.e.*, Giles] was aware during that period of time, that the [Cherokee] Wireless management was allowing some of its accounts payable to become and remain delinquent from time to time.  Common work place knowledge at the time was that [Cherokee] Wireless was in a tight money crunch.")).

medical benefit plan . . . to provide sickness and accident benefits to eligible employees[,]" the failure to provide notice "constituted a breach of the defendants' fiduciary obligations to the plaintiffs because without notice they were not able to make other arrangements for insurance coverage." *Id.* at 983, 986.

However, unlike Blue Cross in *Willett* and the defendants in *McNeese*, Guarantee Life has affirmatively shown that Pursifull's "claimed losses could not have resulted from [Guarantee Life's] failure to cure [Cherokee Wireless's] breach." *See Willett*, 953 F.2d at 1343. Even with prior notice, Pursifull could not converted the Original Policy to an individual one nor obtained alternative coverage, given his terminal medical condition. Moreover, as a disability policy, proof of causation in the form of a participant's ability to postpone medical treatment is not applicable.

Furthermore, Pursufill has not presented any evidence to show how his damages could have been avoided had he received individual notice from Guarantee Life. Therefore, Guarantee Life has carried its burden of demonstrating that Pursifull's damages in the form of lost disability coverage and benefits under the Original Policy would have occurred as a matter of law regardless of his not receiving any individualized notice from Guarantee Life. Accordingly, Guarantee Life's Motion for Summary Judgment is due to be granted.

### 3.   Alternatively, § 502(a)(3) is limited to recovery for relief that is equitable in nature.

Alternatively, Cherokee Wireless is entitled to summary judgment on the additional ground that he seeks monetary damages and not equitable relief pursuant to § 502(a)(3) of ERISA.  In his complaint, Pursifull does not state under which ERISA provision he is asserting his breach of fiduciary claim against Guarantee Life. In moving for summary judgment, Guarantee Life opines that the only suitable provision for Pursifull to proceed under is § 502(a)(3) because there is no plan under which benefits may be paid.  (Doc. #343 at 33).  In his opposition, Pursifull does not dispute Cherokee Wireless's position that § 502(a)(3) is the appropriate statutory basis for bringing his fiduciary claim. Accordingly, Pursifull has waived any argument to the contrary.[7]  Additionally, the United States Supreme Court has made

---

[7]*See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001). *Cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary

it clear that an individual claim for breach of fiduciary duty does not exist under §
502(a)(2) because that provision applies to plan-wide equitable relief. *Varity Corp.
v. Howe*, 516 U.S. 489, 515 (1996) ("They could not proceed under the second
subsection because that provision, tied to § 409, does not provide a remedy for
individual beneficiaries.") (citation omitted).

However, the remedies available under § 502(a)(3) are expressly limited to the
confines of "'appropriate' equitable relief." *Varity*, 516 U.S. at 515. In 2002, the
Supreme Court gave further clarification as to what type of relief is available under
§ 502(a)(3) in the case of *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S.
204 (2002) in which the insurer plaintiff sought injunctive and declaratory
reimbursement relief from the plan participant and beneficiary defendants relating to
proceeds that they had recovered by way of a car accident settlement. *Id.* at 207-08.
In evaluating the nature of the relief sought, the Court reasoned:

> "Almost invariably . . . suits seeking (whether by judgment, injunction,
> or declaration) to compel the defendant to pay a sum of money to the
> plaintiff are suits for 'money damages,' as that phrase has traditionally
> been applied, since they seek no more than compensation for loss
> resulting from the defendant's breach of legal duty."

*Id.* at 713 (citation omitted).

---

judgment").

31

Akin to the situation in *Great-West Life*,[8] Pursifull cannot obtain relief against Guarantee Life under § 502(a)(3) for the payment of disability benefits because what he is really seeking, regardless of the label placed on it, constitutes compensatory or monetary damages relating to his lost period of disability benefits. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of *legal* relief.") (citations omitted); *see also Great-West Life*, 534 U.S. at 212 ("However, not all relief falling under the rubric of restitution is available in equity."); *Great-West Life*, 534 U.S. at 210 ("A claim for money due and owing under a contract is 'quintessentially an action at law.'") (citation omitted).

"Respecting Congress's choice to limit the relief available under § 502(a)(3) to 'equitable relief' requires [this court] to recognize the difference between legal and equitable forms of restitution.  Because [Pursifull] seek[s] only the former, [his] suit is not authorized by § 502(a)(3)."  *Great-West Life*, 534 U.S. at 218 (footnote omitted).  Accordingly, Guarantee Life's Motion for Summary Judgment is due to be granted on the alternative basis that the remedy he seeks is not available under § 502(a)(3) of ERISA.

---

[8]The court notes that both the *Varity* and *Great-West Life* rulings by the Supreme Court, which address the contours of available equitable relief under § 502(a)(3), post-date the Eleventh Circuit's *Willett* decision, discussed *supra*.

####        4.        Alternatively, ERISA liability does not exist in the context of a mere procedural default.

Alternatively, even if Pursifull's claim against Guarantee Life survives the equitable versus legal relief distinctions drawn in *Great-West Life*, the cause of action finally fails on the basis that liability premised upon a mere procedural default without more is typically impermissible under ERISA.  *See Harris v. Pullman Standard, Inc.*, 809 F.2d 1495, 1499 (11th Cir. 1987) ("The Ninth Circuit in *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1984) acknowledged that, ordinarily, violations of ERISA's procedural requirements do not entitle a claimant to substantive relief.").[9]  While "[n]evertheless, the quantity of an employer's procedural violations may work a substantive harm[,]" Pursifull has not shown such a level of " bad faith" or wrongdoing on the part of Guarantee Life to warrant equitable relief in this instance.  *See Harris*, 809 F.2d at 1499 (citing *Blau*, 748 F.2d at 1354 ("When procedural violations rise to the level that they have in this case, they alter the substantive relationship between employer and employee that disclosure, reporting and fiduciary duties sought to balance somewhat more equally.")); *see also Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1076 (9th Cir. 2005) ("The evidence [here]

---

[9]The Ninth Circuit's decision in *Blau*, has since been abrogated on other grounds as recognized in *Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 n.4 (9th Cir. 1990)).

is simply of negligently inadequate communications about a policy cancellation."); *Peralta*, 419 F.3d at 1076 ("There was no evidence of any intentional misleading or trickery, or of any active concealment, as in *Blau*."); *see also Willett*, 953 F.2d at 1343 ("If Blue Cross knew that Mays had failed to inform the beneficiaries about the suspension of plan coverage for nonpayment of premiums, then it had an obligation to cure the breach.") (emphasis added); *McNeese*, 647 F. Supp. at 985 ("In fact, it is possible that the employees at HPM realized the difficulties as early as the summer of 1983.") (emphasis added).

Comparing the actions of Guarantee Life with those of the fiduciaries in other cases where a court has found that the fiduciary has potentially run afoul of § 502(a)(3), Pursifull has failed to adduce sufficient evidence of inequitable conduct by Guarantee Life as a matter of law. "Equity often involves the weighing of wrongdoing as well as of harm. Here, the wrongful conduct did not even approach the upper end of the scale." *Peralta*, 419 F.3d at 1076. Therefore, Guarantee Life is entitled to summary judgment for the additional reason that no evidence, beyond its arguable limited procedural default in failing to notify Pursifull personally that Cherokee Wireless had failed to make premium payments due under the Original Policy[10], exists in this case.

---

[10]Which, as stated in § IV.B.2 *supra*, did not, as a matter of law, cause Pursifull's injury.

## V.    CONCLUSION

For the reasons stated above, both Unum's Supplemental Motion for Summary Judgment and Guarantee Life's Motion for Summary Judgment are due to be granted. Accordingly, both defendants are due to be dismissed with prejudice from the case. The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this the 17th day of September, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge