FILED
2007 Dec-04 PM 12:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JUDY D. PURSIFULL, duly appointed executor of the estate of Joseph P. Pursifull, deceased,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No.: 2:00-CV-3318-VEH |
| **NETWORK CONSTRUCTION SERVICES, INC., CORENET SERVICES, INC., et al.,** ) ) ) ) | |
| **Defendants.** ) | |

**MEMORANDUM OF DECISION**

**I.    INTRODUCTION**

This case was initiated on November 16, 2000 (Doc. #1), and arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* and Alabama state law.[1] (*See generally* Docs. #25, #70, #186). On May 4, 2001, default as to liability was entered against Defendant Cherokee Wireless Services, Inc. ("Cherokee Wireless") with leave to prove damages. (Doc. #62). Subsequently, on May 14, 2002, a second default was entered against Cherokee Wireless with leave to

---

[1] The undersigned inherited the case by reassignment on June 28, 2004. (Doc. #314). The case was stayed, at the request of Pursifull, from March 31, 2005 (Doc. #318) until October 10, 2006. (Doc. #333).

prove damages. (Docs. #246, #247). Similarly, on November 30, 2007, default as to liability was entered against Defendants Network Construction Services, Inc. ("Network") and Corenet Services, Inc. ("Corenet"). (Docs. # 380, #381).

All other defendants have either been dismissed voluntarily or have been dismissed by the court on summary judgment. (*See generally* Docs. #366, #367). Substitute Plaintiff Judy D. Pursifull ("Mrs. Pursifull"), as the duly appointed executor of the estate of her husband, Joseph R. Pursifull ("Pursifull"), seeks a final default judgment against these three (3) remaining defendants on the basis of fraud[2] and with respect to Network and Corenet, specifically under a piercing the corporate veil theory.

A bench trial as to damages was held before the undersigned on Friday, November 30, 2007, in Courtroom 6A, Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203, beginning at 9:30 a.m. (Doc. #368). The court record reflects that notice of the bench trial was mailed to the last known addresses for all three (3) remaining defendants.

---

[2] At the damages trial held on November 30, 2007, counsel for Pursifull stated in open court that he was only pursuing a final judgment of default as to the fraud claims asserted against these remaining defendants, specifically one (1) for misrepresentation and two (2) for fraudulent suppression, discussed more fully below. Accordingly, the scope of the court's decision on default judgment is similarly limited.

In attendance at the bench trial were counsel for Pursifull and Mrs. Pursifull, who also testified as a live witness in support of Pursifull's mental anguish damages. Pursifull appeared as a witness through two (2) video depositions and Colin B. Sillers ("Sillers"), the former President of Cherokee Wireless, appeared as a witness through the reading of portions of his deposition transcript and the playing of a tape-recorded conversation between himself and Pursifull. No attorney or other person appeared on behalf of the remaining defendants during the bench trial.

## II.   STANDARDS GOVERNING DECISION

### A.   Default Judgment

As explained by Judge William H. Steele of the United States District Court for the Southern District of Alabama regarding default judgments:

> The law is clear, however, that Lacey's failure to appear and the Clerk's subsequent entry of default against her do not automatically entitle plaintiffs to a default judgment. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); *see also Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla.2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); *GMAC Commercial Mortg. Corp. v. Maitland Hotel Associates, Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (default judgment is appropriate only if court finds sufficient basis in pleadings for judgment to be entered, and that complaint states a claim). Stated differently, "a default

judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

*Virgin Records America, Inc. v. Lacey*, 510 F. Supp. 2d 588, 591-92 (S.D. Ala. 2007).

### B. Bench Trials

Rule 52 of the Federal Rules of Civil Procedure provides in part:

(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

Fed. R. Civ. P. 52(a). Therefore, pursuant to Rule 52 the court now finds the facts specially and states separately its conclusions of law thereon relating to Pursifull's proof of damages in support of a final order of default judgment under Rule 55(b)(2) against Cherokee Wireless, Network, and Corenet.

### III. FINDINGS OF FACT

The court bases the following findings of fact upon the admitted allegations of Pursifull's Amended Complaint (Doc. #25), Second Amended Complaint (Doc. #70), Fourth Amended Complaint (Doc. #186), and the parties' Joint Stipulation of

Undisputed Facts (Doc. #254) as well as its observations of the witnesses, its study of the documents admitted into evidence, and its notes from the bench trial held on November 30, 2007.

### A. The Remaining Parties

Pursifull was hired by a predecessor to Cherokee Wireless in March of 1996 as a civil project supervisor over various telecommunications site construction projects. On October 29, 1996, Pursifull was diagnosed with stage-4 colon cancer with metastasis to the liver. Pursifull worked full-time for Cherokee Wireless (and its predecessor company) until about March of 1997. Pursifull died on June 18, 2002.

Cherokee Wireless is the former employer of Pursifull. Cherokee Wireless has gone through liquidation proceedings and is no longer in business. Network and Corenet are deemed by admission to be former employers of Pursifull due to Cherokee Wireless's role as a mere adjunct instrumentality, or alter ego, of Network and Corenet.

### B. The Promise Made to Pursifull

On January 4, 1999, Sillers made a promise to Pursifull that Cherokee Wireless would pay him an amount equivalent to his lost disability benefits with Unum Life Insurance Company of America ("Unum") in light of its mistake which caused him to have a lapse in disability coverage, thereby triggering the operation of a preexisting

condition excluding him from any group coverage. This promise was confirmed in writing by Serena Tankersley, the then Human Resources Manager for Cherokee Wireless, by a letter to Pursifull also dated January 4, 1999.

Cherokee Wireless in fact made such payments to Pursifull from January 1, 1999, until October 29, 1999. (On June 10, 1999, Cherokee Wireless's bank apparently indicated to Sillers that it would be taking over control of the company, and in August 1999, the bank informed Sillers that it would require liquidation of Cherokee Wireless to minimize its losses. Cherokee was then liquidated and closed in November 1999.)[3] At the time the promise was made by Sillers and as corroborated by a subsequent telephone conversation on September 17, 1999, between Sillers and Pursifull which Pursifull recorded, Sillers knew that Cherokee Wireless was in a bad financial condition and was unlikely to continue as a viable entity. Therefore, at the time of the promise, Sillers both misrepresented Cherokee Wireless's ability to pay Pursifull and suppressed Cherokee Wireless's negative financial picture from Pursifull.

Subsequently, Sillers also failed to disclose to Pursifull during the liquidation process, the availability of funds to make at least a partial payment to him through monies specifically earmarked for expenses relating to the closing of Cherokee

---

[3] *See generally* Doc. #251.

Wireless and/or through resources from other alter ego company divisions. For example, Sillers negotiated a $50,000.00 severance package for himself as part of Cherokee Wireless's liquidation proceedings.

### C. Proximate Causation and Pursifull's Reliance

Based upon this promise that he would receive disability benefit payments from Cherokee Wireless, Pursifull did not pursue early litigation against Cherokee Wireless, which left him in the position of being an unsecured creditor with a failing company at the time of Cherokee Wireless's liquidation. Pursifull also postponed pursing any possible alternative employment opportunities with a more financially stable company based upon this promise.

Siller's suppression of information to Pursifull about funds that were available during Cherokee Wireless's liquidation or resources available through other alter ego company divisions meant that Pursifull missed out on negotiating a potential lump sum payment from the bank, partial or otherwise, to compensate him for his lost disability benefits caused by Defendants and enable him to spend more time with his family and friends, rather than having to work while suffering with a terminal cancer.

### D. Pursifull's Damages

Cherokee Wireless was paying Pursifull $1,950.00 per month to compensate him for the loss of disability benefits under the Unum group policy. Cherokee

Wireless failed to make payments to Pursifull beginning November 1, 1999, through June 30, 2002, for a period of thirty-two (32) months. Cherokee Wireless also failed to pay the applicable death benefit under the Unum policy, which was three (3) times the monthly disability payment of $1,950.00 or $5,580.00.

While Cherokee Wireless was making disability payments to Pursifull, he was able to spend time with his family, participate in cancer support groups, and research potential cancer clinical opportunities. When Cherokee Wireless ceased making payments to him, Pursifull, for the sake of his family, pursued other jobs, including one project on location in the Washington, D.C. area, in which visits with Mrs. Pursifull were limited to weekends only, every other week, in order to make ends meet. This change in circumstances meant that his time with family and support groups and doing cancer research, while he was dying, was dramatically decreased.

It was clear from Pursifull's video depositions that his longing to be with his family members, including Mrs. Pursifull, his children, and grandchildren and friends from his cancer support groups, and having to give up those contacts during the last months of his life away from home to work was completely devastating to him. His words, alone, do not sufficiently express the anguish that was evident from the study of his face and agitated body language during his periods of speechlessness as he formulated poised responses to questions about the painful impact of this situation on

his family. His nonverbal communication was extremely powerful and credible and showed without question the sincerely distraught nature of his mental state attributable to Defendants' fraudulent acts. Mrs. Pursifull's compelling testimony provided further validation of Pursifull's extreme emotional distress suffered as a result of these Defendants' actions.

## IV.   CONCLUSIONS OF LAW

### A.   Fraud

In light of the above factual findings concerning material misrepresentation/suppression, detrimental reliance, proximate causation, and damages, Pursifull has adequately established the *prima facie* elements of misrepresentation and fraudulent suppression by Cherokee Wireless, and by Network and Corenet as corporations dominant over Cherokee Wireless, under a piecing the corporate veil theory

### B.   Damages

Pursifull offered Ex. 26 at trial to show his calculation of damages, including compensatory and punitive damages. Consistent with Ex. 26, the court concludes that Pursifull is entitled to $68,250.00 in lost disability payments and death benefits. Pursifull's mental anguish damages are reasonably set at three (3) times his calculable damages, or $204,750.00. Therefore, Pursifull's total compensatory damages are

$273,000.00.

Due to the wilfulness nature of Defendants' actions, the court concludes that a punitive damages award of two (2) times Pursifull's total compensatory award, or $546,000.00, is appropriate.

Therefore, the complete amount to be awarded to Pursifull and against Cherokee Wireless, Network, and Corenet, is a compensatory award of $273,000.00 plus a punitive award of $546,000.00 for a total damages award of $819,000.00. Accordingly, the court will enter judgment in favor Pursifull and against Cherokee Wireless, Network, and Corenet, jointly and severally, in the amount of $273,000.00 in compensatory damages and $546,000.00 in punitive damages.

**DONE** and **ORDERED** this 4th day of December, 2007.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge